GRIZZ O'CONNELL, PETE IRVINE WALLER AND WILLIAM ROTSIOS, APPELLANTS, *v.* TOM COX, RESPONDENT.

No. 4425

February 19, 1962                    368 P.2d 761

*Springmeyer, Thompson & Dixon,* and *Robert A. Groves,* of Reno, for Appellants O'Connell and Waller.

*Thomas A. Cooke,* of Reno, for Appellant Rotsios.

*John Chrislaw,* of Gardnerville, for Respondent.

## OPINION

By the Court, McNAMEE, J.:

This is an action brought by respondent to recover $2,282.07 from the appellants, being the balance due for trucking services he allegedly furnished to them. The separate answers of the appellants deny liability and affirmatively allege that the services, if any, were not furnished to the appellants but to Airo Produce, Inc., a corporation. The court found that the respondent rendered the trucking services to the appellants, as individuals, at their request, and that the balance due respondent therefor was $2,282.07. The court further found that each appellant led respondent to believe that the said services were rendered to them as individuals and not to them as a corporation. Judgment was entered in favor of respondent for the balance found due, plus interest and attorney fees. Appeal is from the judgment.

The opening brief assigns the following errors:

1. Error in awarding judgment against appellants upon the contract obligation of the corporation.

2. Error in disregarding the corporate entity in the absence of pleadings or proof warranting such action.

3. The evidence does not support the findings or the judgment.

4. The findings do not support the judgment.

Because we have concluded that a reversal is required, our discussion will be limited to the third error assigned.

The evidence shows that on February 26, 1959 the appellants, as incorporators, filed with the Secretary of State articles of incorporation for Airo Produce, Inc., and on said day, a certificate of such filing was issued. On February 27, 1959 the first meeting of the incorporators and the board of directors was held, at which time bylaws were adopted. The minutes of this meeting and the bylaws were not signed, however, until June 10, 1959.

On February 26, 1959 an annual general business license and a building permit were issued by the city of Reno to Airo Produce, Inc. On March 1, 1959 the corporation began operating a produce business from a warehouse it had leased, located at 1005 W. 6th Street, Reno. The business license was posted on a window of the warehouse between the loading dock and the office, and the permit was posted on the wall of the walk-in refrigerator inside the warehouse. On the front of the warehouse, over the main entrance, a red and white sign, at least two feet high and ten or twelve feet long, worded "AIRO PRODUCE, INC.," was placed sometime prior to March 30, 1959.

Appellant Rotsios was manager of the company and he hired respondent to haul produce between Winnemucca and Reno, and between Reno and Los Angeles, for the period commencing March 30, 1959, when respondent obtained his first load at the warehouse, and ending April 28, 1959. On the last-mentioned date there remained due to respondent for such hauling the sum of $2,282.07. For each trip respondent submitted a bill, four of which were made out to Airo Produce, Inc., four to Airo Produce Co., and two to Airo Produce Co., Inc. The payments respondent received consisted of corporate checks, the maker being Airo Produce, Inc., and signed by O'Connell and Rotsios, except for two $100 cash payments and one personal check of Rotsios given at a time when neither O'Connell nor Waller was present to cosign as required by the bank's signature card.

Rotsios testified that when he first met respondent at the warehouse on March 30, 1959, respondent noticed the sign "AIRO PRODUCE, INC.," and when he asked if the business was a corporation, Rotsios said that it was and that he was manager and vice president of the corporation. Respondent denied that any such conversation had taken place. "I don't believe there was a mention made of it until about the middle of April." He admitted, however, that he had noticed the sign "AIRO PRODUCE, INC." on the building before he had commenced his first haul.

O'Connell testified that it was possible he told respondent that Airo Produce, Inc., was not a corporation sometime after April 28, 1959. On the other hand, respondent testified that about April 15 when he had about $1,000 due him, he asked O'Connell if the business was incorporated, and that O'Connell had replied that he did not believe the corporate papers had been filed. Respondent further testified that on May 14, when he asked Waller to sign a personal note for the amount owed, Waller had said that he did not believe they were incorporated.

It was upon the foregoing evidence that the lower court found that respondent's services had been rendered not to the corporation but to the appellants as individuals, and that appellants had led respondent to believe that he was dealing with individuals.

We are not concerned with the question whether or not Airo Produce, Inc., was a de jure corporation. In fact, respondent does not attack its corporate existence but premises his brief on the assumption that Airo Produce, Inc., was an existing corporation, and then states "it is submitted that the appellants would still be individually liable to the respondent."

The foregoing evidence shows conclusively that respondent was put on notice that the company was a corporate entity. Corporate affairs were carried on in the corporate name, not only by the officers of the corporation, but also by respondent when his dealings with the company required his use of the name.

In giving effect to respondent's testimony wherever it conflicts with that of O'Connell and Rotsios, we find nothing that caused any doubt in respondent's mind as to corporate existence until April 15, 1959, at a time when his period of employment was more than half completed. Even then, when Rotsios and O'Connell might have said something which could have caused doubt of the company's corporate existence, none of the appellants ever represented to respondent that he could look to the personal liability of the appellants for satisfaction of his claims as was the situation in Swartout v. Grover Collins Drilling, 75 Nev. 297, 339 P.2d 768.

44

In fact, respondent for his trip on April 15, 1959 and subsequent thereto, continued to submit his individual statements naming Airo Produce, Inc., as the debtor. Any representation appellant Waller might have made relative to the corporate entity took place more than two weeks after respondent's last services had been performed.

The evidence showing without contradiction that respondent at all times dealt with the company as a corporation and failing to show that any conduct on the part of the appellants or any of them caused respondent to rely on the personal liability of appellants, does not support the findings or the judgment based thereon.

Reversed.

BADT, C. J., and BOWEN, D. J., concur.

Thompson, J., being disqualified, the Governor designated Honorable Grant L. Bowen, Judge of the Second Judicial District, to sit in his stead.