JERRY D. ECKLUND, APPELLANT, *v.* NEVADA WHOLE-SALE LUMBER CO., A NEVADA CORPORATION, RESPONDENT.

No. 8624

April 7, 1977                              562 P.2d 479

*Hale, Belford, Lane & Peek,* Reno, for Appellant.

*A. D. Jensen,* Reno, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

Nevada Wholesale Lumber Co. commenced this action against Ecklund Insulation, Inc., seeking payment for building materials furnished Ecklund. Judgment by stipulation was entered against Ecklund for $9,663.63 plus $1,000 attorney's fees and costs. Nevada in its complaint also joined, as a party defendant, Ecklund's president, Jerry D. Ecklund. The sole issue presented to the district judge and to this court is whether Jerry is personally liable for the debt. The district judge held that he was liable and entered judgment accordingly. We disagree and therefore reverse.

1. At the close of Nevada's case in chief, Jerry made a motion to dismiss the complaint pursuant to NRCP 41(b). The motion was denied, and the case was submitted without the presentation of further evidence. The district judge found that Nevada had established a prima facie case, that there was a unity of interest and ownership between Jerry and the Ecklund corporation, and that Jerry controlled it. The district judge concluded, therefore, that Jerry was the corporation's alter ego and personally liable for the debt.

2. Jerry urges that Nevada did not meet the burden of proving by a preponderance of the evidence the necessary elements upon which the alter ego theory is predicated.

The requirements for applying the alter ego doctrine are set forth in McCleary Cattle Co. v. Sewell, 73 Nev. 279, 282, 317 P.2d 957, 959 (1957):

> (1) The corporation must be influenced and governed by the person asserted to be its alter ego. (2) There must be such unity of interest and ownership that one is inseparable from the other; and (3) The facts must be such that adherence to the fiction of separate entity would, under the circumstances, sanction a fraud or promote injustice.

Each of the above three elements must be established by a preponderance of the evidence by the party seeking to pierce

the corporate veil. *See* North Arlington Medical Bldg., Inc., v. Sanchez Constr. Co., 86 Nev. 515, 471 P.2d 240 (1970); Baer v. Amos J. Walker, Inc., 85 Nev. 219, 452 P.2d 916 (1969).

Ecklund was incorporated in 1963. The articles of incorporation named Jerry D. Ecklund (the appellant), Leonard E. Shaunce, and Janet Ecklund as directors. Jerry served at all times as president. The capital structure was stated to be 75,000 shares of $1-par-value common stock.

An unaudited financial statement of May 8, 1967, showed the corporation to have assets of $94,920.38, with liabilities of an equal amount, and paid-in capital of $2,300, with retained earnings of $21,931.28. No evidence was presented regarding the ownership of the stock.

Nevada's general manager testified. He stated that he knew of the existence of Ecklund Insulation, Inc., and had done business with the corporation; that Jerry, but no other person, had on numerous occasions ordered insulation materials for the corporation, which were charged to the corporation's account.

Nevada urged before the court below that Jerry had admitted personal liability for the debt and his alter ego relationship with the corporation. In support of these contentions, Nevada presented Jerry's answer to the complaint filed with the State Contractors' Board seeking payment of its debt, where Jerry admitted: "We owe Nevada Wholesale Lumber Company $9,628.46." Nevada also presented a responsive pleading in another lawsuit regarding the sale of the corporation. Jerry stated in that document that he had agreed orally to sell the corporation, but when the seller failed to make payment Jerry resumed control of the corporation.

The sole remaining evidence presented was that the State Contractors' Board had suspended the corporation's license pending payment of the debt and that the corporation had failed to file with the Secretary of State its annual list of officers and directors for July 1, 1975, to June 30, 1976.

3. It is clear from the foregoing that the only element Nevada has established by a preponderance of the evidence is that Jerry influenced and governed the corporation. He served as president and director of the corporation, and he appears to have been the sole person acting on its behalf.

The evidence, however, does not establish that there was a

unity of interest and ownership between Jerry and the corporation. It was never shown that Jerry owned a single share of the 7,000 outstanding shares of stock.

Ecklund's admissions are too ambiguous to establish a unity of interest and ownership. The use of the pronoun "we" in the answer to the complaint to the State Contractors' Board does not necessarily indicate an admission of personal liability.

The record is devoid of any other evidence that adherence to the corporate fiction would promote an injustice, the third necessary element for the alter ego theory. It does not appear that the corporation was undercapitalized; it conducted business successfully for 12 years before running into financial difficulty. Nevada knew it was dealing with a corporation and could not reasonably have relied on Jerry's personal credit, absent any conduct by Jerry inducing it to do so. The only evidence of any corporate irregularities—the termination of its license and its being held delinquent in filing a list of current officers and directors—related to events subsequent to the facts pertinent herein, and was therefore irrelevant.

4.   Cases in which this court has chosen to disregard the corporate entity and hold an individual liable for its debts have required considerably more. We turn to review those cases. In *McCleary Cattle Co.*, this court held a cattle company liable for the debts of a timber company. The court found that, for tax purposes, all the assets of the timber company had been transferred to the cattle company, which had borne the litigation expenses of the timber company. It further found that the same two individuals were the sole shareholders in both corporations and that one of these individuals served as president for both. Unlike the instant case, the *McCleary* case clearly established a unity of ownership and interest. Furthermore, to allow a corporation to escape its debts by transferring its debts to another, similarly situated corporation would promote an injustice.

In Caple v. Raynel Campers, Inc., 90 Nev. 341, 526 P.2d 334 (1974), this court held the principal incorporator and corporate officer of two financing companies personally liable for damages due to wrongful repossession of a truck by corporate employees. Its determination rested on findings of fact clearly distinguishing it from the instant case:

> Caple . . . alone stands out as the investing and directing force of both corporations. He was the sole investor and stockholder, the only person with direction and control. . . .
> There did exist between Caple and the two corporations a unity . . . [of] interest . . . [and] ownership of such

nature that the corporation had no apparent independent business operation and existed solely for the purpose of conducting the personal business of Caple.

*Id.* at 343–344, 526 P.2d at 336. The *Caple* case is distinguishable on the same ground as *McCleary,* as involving a clear unity of ownership and interest.

A case of injustice was involved in Carson Meadows, Inc. v. Pease, 91 Nev. 187, 533 P.2d 458 (1975). In that case, this court held the president and director of a corporation liable in damages to investors he had induced to loan money to the corporation by misrepresenting the corporation as financially sound. The record indicated that the defendant had wholly controlled the corporation and, while not the sole stockholder, had used it and its assets for whatever purposes he wished. Not only were none of the corporate formalities observed, but "Goldbeck commingled corporate funds with his own. He treated some corporate assets as his own and manipulated them to suit himself. He appears to have negotiated all of the corporate business, and truly may be said to have used the corporate shell as a conduit for his individual enterprise." *Id.* at 191, 533 P.2d at 461. No such showing supports the trial court's decision in the instant case.

This court has rejected the alter ego theory in other, less extreme fact situations. *See* Plotkin v. National Lead Co., 87 Nev. 51, 482 P.2d 323 (1971); North Arlington Medical Bldg., Inc. v. Sanchez Constr. Co., 86 Nev. 515, 471 P.2d 240 (1970); Baer v. Amos J. Walker, Inc., 85 Nev. 219, 452 P.2d 916 (1969); O'Connell v. Cox, 78 Nev. 40, 368 P.2d 761 (1962); and Nevada Tax Comm'n v. Hicks, 73 Nev. 115, 310 P.2d 852 (1957).

The instant case is allied with those cases in which the corporate entity was upheld. Nevada has failed to meet its burden of establishing the three required elements of the alter ego doctrine. Therefore, the decision of the trial court holding Jerry D. Ecklund personally liable for the debts of the corporation is reversed.

BATJER, C. J., and ZENOFF, THOMPSON, and GUNDERSON, JJ., concur.