ALLEN R. LORENZ, Trustee of the EMMA GUNDERSON TRUST, and SANDRA LORENZ, ALLEN LORENZ, and ELAINE LOVERSO, Trustee of the DON and CARMELINA LOVERSO FAMILY TRUST, Appellants, v. BELTIO, LTD., ARTHUR D. STRUBLE and BARBARA STRUBLE, Respondents.

BELTIO, LTD., Cross-Appellant, v. ALLEN R. LORENZ, Trustee of the EMMA GUNDERSON TRUST, and SANDRA LORENZ, ALLEN LORENZ and ELAINE LOVERSO, Trustee of the DON and CARMELINA LOVERSO FAMILY TRUST, Cross-Respondents.

No. 25434

September 1, 1998 963 P.2d 488

[Rehearing denied November 25, 1998]

*Gezelin & Gezelin,* Reno; *Glade Hall,* Reno, for Appellants/ Cross-Respondents Lorenz.

*Bowers, Thomas and Associates,* Verdi, for Appellant/Cross-Respondent Loverso.

*Gerald A. Phillips,* Reno, for Respondent/Cross-Appellant Beltio, Ltd.

*Arthur D. Struble and Barbara Struble,* Reno, in Proper Person.

## OPINION

*Per Curiam:*

In 1965, Allen and Emma Gunderson entered into a fifty-five year lease agreement with Don Loverso. The Gundersons owned land in Reno, which Don Loverso leased in order to build the Roulette Motel. The Gundersons' ownership interest subsequently passed to their daughter, Carole Lorenz, and then to her children, appellants/cross-respondents Allen R. Lorenz, trustee of the Emma Gunderson Trust, Sandra Lorenz, and Allen Lorenz (collectively referred to as "the Lorenzes"). Don Loverso's leasehold interest subsequently passed to his daughter, appellant/cross-respondent Elaine Loverso, trustee of the Don and Carmelina Loverso Family Trust ("Loverso").

In 1976, Don Loverso assigned his leasehold interest to an entity in which David A. Read was a partner; through a series of subsequent transactions, Read became the personal assignee. On

January 17, 1992, Read and respondents Arthur D. Struble and Barbara Struble entered into negotiations regarding a subsequent assignment of the lease. The Strubles formed a corporation, respondent/cross-appellant Beltio, Ltd., to conduct the motel's business. On January 23, 1992, the Lorenzes purported to terminate the lease according to its terms. However, Beltio, Ltd. refused to relinquish possession. On August 27, 1992, Beltio, Ltd. filed for bankruptcy.

The district court entered judgment in favor of the Lorenzes, but refused to pierce Beltio, Ltd.'s corporate veil and hold the Strubles personally liable.

On appeal, the parties dispute whether the Lorenzes validly terminated the lease on January 23, 1992, and whether Read validly assigned the lease to Beltio, Ltd. prior to January 23, 1992. Additionally, Beltio, Ltd. and the Strubles contend that the district court violated the bankruptcy court's automatic stay of this case by holding a bench trial and entering a judgment awarding the Lorenzes and Loverso damages. The Lorenzes and Loverso allege that the district court erred by refusing to pierce Beltio, Ltd.'s corporate veil, which would have subjected the Strubles to personal liability for unlawful possession of the motel.

## FACTS

On January 18, 1965, the Gundersons entered into a fifty-five year lease agreement, in which they would lease their land in downtown Reno to Don Loverso, who would build a motel on that land. Under the terms of the lease, the lessee was to pay the lessor $1,100.00 per month for rent and a percentage of the profits, called an "override." The lease provided that if the lessee defaulted, the lessor could send notice to cure within thirty days. If the defects were not cured within that time, the lessor could physically enter the property and declare the lease terminated. Over the years, Don Loverso assigned the lease several times until Read became the lessee.

On December 19, 1991, pursuant to the lease, the Lorenzes sent Read a notice of default providing thirty days to cure certain defects: specifically, overdue property tax payments, unpaid rent, and unpaid override payments. The Lorenzes also sent a notice to quit with five days to cure, pursuant to NRS 40.2516, a provision governing unlawful detainer actions. These notices were served on Read on December 23, 1991. On January 17, 1992, the Lorenzes sent another notice to Read listing new defects and giving thirty days to cure. In this notice, the Lorenzes specified that they were not waiving the named defects in the prior notices.

Also on January 17, 1992, the Strubles allegedly formed an oral agreement with Read, in which Read assigned his interest in

the lease to Beltio, Ltd., a corporation wholly owned by the Strubles and formed solely for the purpose of acquiring the lease. On that day, Mr. Struble wrote a personal check in the amount of $977.00 for the motel's property taxes. On January 20, 1992, Mr. Struble and Read allegedly signed a written agreement of assignment. In exchange, Mr. Struble gave Read a promissory note secured by property in Colorado.[1] The Strubles claim to have taken possession of the motel on January 20, 1992.

On January 23, 1992, thirty-one days after Read was served with the December 1991 notice of default and notice to quit, the Lorenzes and their attorney entered the property and, pursuant to the lease agreement, declared the lease terminated. Those in control of the motel refused to relinquish possession and escorted the parties off the property.

On January 23, 1992, the corporate bylaws for Beltio, Ltd. were signed, and on January 30, 1992, the Secretary of State issued a certificate of incorporation for Beltio, Ltd.

On January 28, 1992, Read and the Strubles, on behalf of Beltio, Ltd., signed another copy of the same assignment agreement and had it notarized. Although the signatures and notarization occurred on January 28, 1992, this second agreement was dated January 20, 1992. Upon signing the agreement, the Strubles and Read purposely destroyed the original January 20, 1992 agreement.

On February 4, 1992, the Lorenzes filed a complaint in the district court against Read for a declaratory judgment that the lease was terminated on January 23, 1992, and seeking damages for waste committed on the property. In addition, the Lorenzes filed an application for a writ of restitution.

On February 10, 1992, Beltio, Ltd. held a meeting of its board of directors[2] to ratify the January 1992 assignment from Read. In April 1992, the state district court granted Loverso's motion to intervene as a defendant in the Lorenzes' action as the legal representative of the original lessee, Don Loverso. On August 17,

---

[1]The Strubles "sold" the Colorado property to Beltio, Ltd. in exchange for an installment note in which Beltio, Ltd. would pay the Strubles $97,000.00. Beltio, Ltd. then "paid" Read with a $85,000.00 promissory note secured by the Colorado property that Beltio, Ltd. now "owned." However, this Colorado property had apparently already been foreclosed upon.

[2]The Strubles are sole shareholders and directors of Beltio, Ltd. In addition, Mr. Struble is the president, and Ms. Struble is the secretary/treasurer. At trial, Ms. Struble testified that Mr. Struble conducted all the finances of Beltio, Ltd. The only tasks that Ms. Struble performed as secretary/treasurer of Beltio, Ltd. were attending the "meetings" between Mr. Struble and herself, signing all corporate documents, and "whatever need[ed] to be done" when Mr. Struble was out of town. This included occasionally buying supplies at Costco or depositing rent checks.

1992, the Lorenzes filed a motion for summary judgment, alleging that no genuine issues of material fact existed regarding the lease's termination on January 23, 1992.

On August 27, 1992, Beltio, Ltd. filed for bankruptcy in federal court, which triggered the automatic stay pursuant to 11 U.S.C. § 362. The bankruptcy court required the motel to remain in Beltio, Ltd.'s possession until further order. On September 22, 1992, the district court granted the Lorenzes a writ of restitution, concluding that the lease was terminated on January 23, 1992. The district court subsequently voided its writ of restitution upon being informed of the bankruptcy proceedings.

On December 2, 1992, the bankruptcy court reaffirmed the automatic stay with respect to Beltio, Ltd.'s assets (which consisted solely of its interest in the motel lease), but lifted the stay so as to allow the state district court "to decide what interest, if any, Debtor, Beltio, Ltd., as intervenor, may have in the original land lease between the Lorenzes and Loverso."

On December 10, 1992, Beltio, Ltd. and the Strubles collectively filed in district court their motion to intervene in the Lorenzes' action, which the district court subsequently granted. The district court also conducted a hearing to determine Beltio, Ltd.'s interest in the lease.

On December 30, 1992, the district court issued its special findings and order. It determined that (1) the lease was terminated by the Lorenzes' re-entry on January 23, 1992; (2) if Beltio, Ltd. had the lease, it was subject to the same right of re-entry that the Lorenzes had against Read; and (3) Beltio, Ltd. never had the lease because the lease terminated prior to Read's assignment to Beltio, Ltd. on January 28, 1992. Although, by this order, the district court essentially granted the Lorenzes' August 17, 1992 motion for summary judgment, the court never issued a final judgment.

On March 31, 1993, the bankruptcy court issued an order modifying the automatic stay on the state court proceedings against Beltio, Ltd.:

> [T]he automatic stay is lifted for the sole purpose of allowing litigation to continue in [the state court case], to allow all issues as to all parties to be resolved and adjudicated, including but not necessarily limited to deciding what interest, if any, debtor, BELTIO, LTD., as intervenor, may have in the original land lease between LORENZ and LOVERSO, and resolving the issues in this case by jury trial, if appropriate.

In early 1993, the state court litigation was reassigned to a new judge, who ordered the refiling of all pleadings. Therefore, on September 24, 1993, the Lorenzes filed another motion for sum-

mary judgment, which incorporated the August 17, 1992 motion, alleging that the lease terminated on January 23, 1992. Beltio, Ltd. never filed an opposition to the September 24, 1993 motion. The Lorenzes also filed a motion to confirm the December 30, 1992 special findings and order, which had essentially granted the August 17, 1992 motion. On October 28, 1993, the Lorenzes filed a request for submission because Beltio, Ltd. had failed to oppose the September 24, 1993 motion for summary judgment.

Meanwhile, pursuant to an October 6, 1993 judicially supervised settlement compromise, the Lorenzes agreed to merge their land interest with Loverso's master lease interest; therefore, the Lorenzes and Loverso became equal co-owners in both the land and the motel. The Lorenzes and Loverso, whose interests were now aligned, further agreed to dismiss Read from the proceedings.

On November 3, 1993, the district court granted the Lorenzes' motion for summary judgment and confirmed the prior judge's December 30, 1992 special findings that the lease had terminated on January 23, 1992, and that Beltio, Ltd. never acquired a lawful interest in the lease. On November 15, 16, and 17, 1993, the district court conducted a bench trial limited to the issues of whether Beltio, Ltd. was the alter ego of the Strubles and what damages Beltio, Ltd. owed the Lorenzes and Loverso for its unlawful possession of the motel. At the conclusion of trial, the district court determined that the Lorenzes and Loverso were entitled to damages in the amount of $38,773.40 plus attorney's fees and costs. Additionally, the court determined that Beltio, Ltd. was not the alter ego of the Strubles and thus refused to pierce Beltio, Ltd.'s corporate veil.

Thereafter, on November 19, 1993, Beltio, Ltd. filed a motion to reconsider the court's November 3, 1993 summary judgment order, claiming that its attorney never received the motion. It also moved the court to reconsider the damages award from trial, arguing that the district court's award of damages violated the bankruptcy court's automatic stay. On December 15, 1993, the state district court denied Beltio, Ltd.'s motions to reconsider the orders granting summary judgment and awarding damages. The district court further issued its findings of fact, conclusions of law, and final judgment, finding that the lease terminated on January 23, 1992, Read never validly assigned the lease to Beltio, Ltd., and Beltio, Ltd. did not have lawful possession of the motel. On January 14, 1994, Beltio, Ltd. filed its notice of appeal from the final judgment. On January 24, 1994, the Lorenzes and Loverso filed their notice of appeal.[3]

_____

[3]On December 9, 1993, the bankruptcy court ordered that Beltio, Ltd. retain possession of the motel until this court resolves the instant appeal. Accordingly, Beltio, Ltd. continues to possess the motel as of the date of this opinion.

## DISCUSSION

I. *The district court's finding that the lease terminated on January 23, 1992*

 A. *The September 24, 1993 unopposed summary judgment motion*

On November 3, 1993, pursuant to NRCP 56(e) and DCR 13(3),[4] the district court granted the Lorenzes' September 24, 1993 unopposed summary judgment motion which alleged that the lease ended on January 23, 1992. At the same time, the district court also granted the Lorenzes' motion to confirm the prior judge's December 30, 1992 special findings, determining that the lease terminated on January 23, 1992. Beltio, Ltd. did file an opposition to the motion to confirm.

On November 19, 1993, Beltio, Ltd. filed a motion for reconsideration of the November 3, 1993 summary judgment order, claiming it never received the September 24, 1993 motion for summary judgment because the Lorenzes sent it to the wrong address. The Lorenzes responded, claiming that the summary judgment motion was enclosed in the same envelope as several other motions to which Beltio, Ltd. did respond. The Lorenzes filed two sworn affidavits with their response to Beltio, Ltd.'s motion. One affidavit stated that the motion for summary judgment was placed in the same envelope as seven other motions, to which Beltio, Ltd. did respond. Another affidavit stated that although the address on the certificate of service reflected a typographical error, the secretary typed the correct address on the envelope. After reviewing the pleadings and attached affidavits, the district court denied the motion for reconsideration.

On appeal, Beltio, Ltd. again argues that it did not receive the September 24, 1993 summary judgment motion. A district court's determinations of fact will not be set aside unless they are clearly erroneous. Hermann Trust v. Varco-Pruden Buildings, 106 Nev. 564, 566, 796 P.2d 590, 592 (1990). Here, after reviewing the affidavits supplied by the Lorenzes, the district court deter-

---

[4]NRCP 56(e) provides in part, "If [the non-moving party] does not so respond, summary judgment, if appropriate, shall be entered against him." DCR 13(3) provides in part, "Failure of the opposing party to serve and file his written opposition may be construed as an admission that the motion is meritorious and a consent to granting the same."

mined that their version of the facts was more credible.[5] As the record supports the district court's factual findings with regard to the Lorenzes' service of their motion for summary judgment, we will not substitute our judgment for that of the district court. Accordingly, we conclude that the district court did not err in denying Beltio, Ltd.'s motion for reconsideration.[6]

### B.  *Termination of the lease on January 23, 1992*

Beltio, Ltd. argues that due to alleged defects of the December 1991 and January 1992 notices, the Lorenzes' January 23, 1992 re-entry did not serve as a valid termination of the lease. Specifically, Beltio, Ltd. alleges that issuing both a thirty-day notice and a five-day notice created an "irreconcilable ambiguity," and thus, the lease did not terminate on January 23, 1992. We disagree.

When the parties do not dispute the facts, the interpretation of a contract is a question of law, which we review *de novo*. Washoe County v. Transcontinental Ins., 110 Nev. 798, 800, 878 P.2d 306, 307-08 (1994). With regard to factual determinations, "[a] district court's findings will not be disturbed on appeal unless they are clearly erroneous and are not based on substantial evidence." Gibellini v. Klindt, 110 Nev. 1201, 1204, 885 P.2d 540, 542 (1994). "Substantial evidence has been defined as that which 'a reasonable mind might accept as adequate to support a conclusion.' " State, Emp. Security v. Hilton Hotels, 102 Nev. 606, 608,

---

[5]We reject Beltio, Ltd.'s contention, raised for the first time on appeal, that the "excusable neglect" standard of NRCP 60(b) mandates that the summary judgment be set aside.

[6]We note that on October 28, 1993, the Lorenzes filed a request for submission of the summary judgment motion. Beltio, Ltd. still failed to file an opposition. Also, after summary judgment was granted, Beltio, Ltd. fully participated in the damages trial, with complete knowledge of the issues, and without protesting the grant of summary judgment. Therefore, even if Beltio, Ltd. did not receive the motion, we conclude that it had ample opportunity to inform the court prior to its ruling on the motion and prior to proceeding to trial.

Moreover, throughout these proceedings, Beltio, Ltd. had many opportunities other than the September 24, 1993 summary judgment motion to argue its interest in the motel. For example, Beltio, Ltd. opposed the September 24, 1993 motion to confirm the December 30, 1992 order which stated that the lease had terminated, leaving Beltio, Ltd. with no interest. As the issues in the summary judgment motion were litigated and decided many times throughout the record, we conclude that any opposition filed by Beltio, Ltd. to the September 24, 1993 summary judgment motion would not have changed the outcome, and therefore, reversal on this issue is not warranted.

729 P.2d 497, 498 (1986) (quoting Richardson v. Perales, 402 U.S. 389 (1971)).

The parties do not contest the plain meaning of the language in the default provision of the lease and agree that the December 1991 notice of default was served more than thirty days before re-entry. Although the parties debate whether Read subsequently effectuated a cure, we conclude that there was substantial evidence to support the prior judge's finding, which was subsequently adopted by the district court, that the Lorenzes' re-entry on January 23, 1992 terminated the lease pursuant to the December 1991 notice of default.

That the Lorenzes also invoked the statutory unlawful detainer provision by sending a five-day notice to quit does not alter the fact that the district court found that they had validly ended the lease pursuant to its own terms. *See* International Industries v. United Mortgage Co., 96 Nev. 150, 154, 606 P.2d 163, 166 (1980) (upholding the termination of a lease pursuant to its terms where the lessee failed to cure within thirty days of the lessor's notice to cure); *see also* Davidsohn v. Doyle, 108 Nev. 145, 147, 825 P.2d 1227, 1230 (1992) (holding that a lessor who seeks termination under a lease provision is not required to comply with the statutory notice requirements for unlawful detainer). Likewise, NRS 40.252(1) provides only that it is unlawful to contract to *shorten* the five-day notice period provided by statute.

Based on our review of the relevant facts and applicable law, we conclude that the district court properly determined that the lease terminated on January 23, 1992.

## II. *Validity of the lease assignment from Read to Beltio, Ltd.*

On January 20, 1992, Mr. Struble, who was fully aware of the December 1991 notices of default, entered into a contract with Read, assigning the lease to Beltio, Ltd. In exchange, Mr. Struble gave Read a promissory note secured by property in Colorado, which was also involved in litigation. Mr. Struble claims he took possession of the motel on January 20, 1992, by securing fire insurance, paying $977.00 for property taxes, obtaining a business license, and commencing rehabilitation of dilapidated rooms.

On January 28, 1992, Mr. Struble and Read executed another copy of the same assignment contract in front of a notary public; this contract was dated January 20, 1992. They then destroyed the original contract, which had been signed on January 20, 1992. The parties do not dispute these facts. The issue presented is whether the assignment legally took effect on January 20, 1992, or on January 28, 1992. Thus, Beltio, Ltd. either acquired a lawful interest in the lease three days prior to its termination, or

Beltio, Ltd. never acquired a lawful interest in the lease because it was terminated prior to the assignment.

By dating the second contract as January 20, 1992, Mr. Struble and Read agreed on their intention to give effect to the contract as of January 20, 1992, rather than eight days later.

> [T]he parties are in the best position to know what was intended by the language employed. . . . *It is to be assumed that the parties to a contract know best what was meant by its terms and are the least likely to be mistaken as to its intention* . . . . In case of doubt or uncertainty, therefore, the courts will generally follow the parties' own construction of their language, at least if that construction is reasonable.

17A Am. Jur. 2d *Contracts* § 357 (1991) (emphasis added) (footnotes omitted).

As the only parties to the January 28, 1992 assignment agreement, Mr. Struble and Read are in the best position to know if they intended to assign the motel lease on January 20, 1992, or on January 28, 1992. Although they destroyed the January 20, 1992 document, they did so only because the January 28, 1992 document was notarized. That second document still contained the date January 20, 1992, thus evidencing their intention to give it effect as of that date. Accordingly, we conclude that the district court erred in determining that the assignment became effective on January 28, 1992.

However, upon assignment, Beltio, Ltd. acquired the same right, title, and interest in the motel that Read possessed on that day. 6A C.J.S. *Assignments* § 73 (1975). Thus, the assignment to Beltio, Ltd. did not eliminate the effectiveness of the notices of default sent by the Lorenzes to Read. Rather, Beltio, Ltd. knowingly took possession of the motel subject to the notices. Therefore, we conclude that on January 23, 1992, when the lease was terminated, Beltio, Ltd.'s leasehold interest terminated as well, and it became a holdover-tenant liable for damages.[7]

---

[7]The Lorenzes and Loverso further claim that Beltio, Ltd. could not have acquired an interest in the lease on January 20, 1992, because it did not become a corporation until January 30, 1992, when the Secretary of State issued a certificate of incorporation. We conclude that this contention lacks merit.

On February 20, 1992, the directors of Beltio, Ltd., the Strubles, ratified the January 1992 assignment contract pursuant to NRS 78.135(3), which provides:

> Any contract or conveyance, otherwise lawful, made in the name of a corporation, which is authorized or ratified by the directors, or is done

Therefore, any error in determination of the assignment date was harmless. *See* NRCP 61.

III. *No violation of the bankruptcy court's stay*

Beltio, Ltd. contends that the trial was conducted by the district court in violation of the bankruptcy court's automatic stay of proceedings. In its March 31, 1993 order, the bankruptcy court lifted the stay:

> to allow *all issues as to all parties to be resolved and adjudicated, including but not necessarily limited to* deciding what interest, if any, debtor, BELTIO, LTD., as intervenor, may have in the original land lease between LORENZ and LOVERSO, and resolving the issues in this case by jury trial, if appropriate.

(Emphasis added.)

Any action taken in violation of the automatic stay is rendered void and without effect. In re Schwartz, 954 F.2d 569, 571 (9th Cir. 1992). Therefore, Beltio, Ltd. and the Strubles contend that if the district court conducted the damages trial in violation of the stay, the judgment determining damages is void.

While the bankruptcy court has jurisdiction over the debtor's estate, which includes all legal and equitable interests in property, state law defines what those interests are. Wilson v. Bill Barry Enterprises, Inc., 822 F.2d 859, 861 (9th Cir. 1987). A mere possessory interest in real property, even if no legal interest in that property exists, falls within the confines of the automatic stay. In re 48th Street Steakhouse, Inc., 835 F.2d 427, 430 (2d Cir. 1987). However, the bankruptcy court may lift the stay for specific issues to be determined in state court. *See Wilson,* 822 F.2d at 861.

The parties do not dispute that the stay was lifted with regard to determining what interest, if any, Beltio, Ltd. had in the lease; what is disputed is whether lifting the stay permitted the district court to determine the amount of damages Beltio, Ltd., as debtor,

---

within the scope of the authority, actual or apparent, given by the directors, binds the corporation, and the corporation acquires rights thereunder, whether the contract is executed or is wholly or in part executory.

*See also* Jacobson v. Stern, 96 Nev. 56, 60-61, 605 P.2d 198, 201 (1980) (holding that if a pre-incorporation contract is made by the promoter and, when eventually formed, the corporation expressly or impliedly ratifies the contract, it becomes a valid obligation of the corporation).

owed its creditors, the Lorenzes and Loverso. We conclude that this determination did not violate the stay.

The language of the bankruptcy court's order lifting the stay was broad and not specifically limited to the issue of Beltio, Ltd.'s interest in the lease. Accordingly, we conclude that the amount of damages that Beltio, Ltd. owed the Lorenzes and Loverso as a holdover tenant fell within the language of the order lifting the stay. Likewise, we conclude that the district court was authorized to reach the alter ego issue, addressed below, pursuant to the bankruptcy court's order. If the Strubles were the Beltio, Ltd.'s alter ego, then they would have been liable on the judgment. Therefore, these issues were properly resolved by the district court.

## IV. *Alter ego doctrine*

At the conclusion of the bench trial, the district court determined that the Strubles were not the alter ego of Beltio, Ltd., and thus, they were not personally liable for Beltio, Ltd.'s debts. The Lorenzes and Loverso contend that this decision was in error.

The district court's determination with regard to the alter ego doctrine will be upheld on appeal if substantial evidence exists to support the decision. Mosa v. Wilson-Bates Furniture Co., 94 Nev. 521, 524, 583 P.2d 453, 455 (1978). We acknowledge that "[t]he corporate cloak is not lightly thrown aside." Baer v. Amos J. Walker, Inc., 85 Nev. 219, 220, 452 P.2d 916, 916 (1969). However, we conclude that the evidence does not support the district court's conclusion.

The requirements for finding alter ego and piercing the corporate veil are:

> "(1) The corporation must be influenced and governed by the person asserted to be its alter ego[;] (2) There must be such unity of interest and ownership that one is inseparable from the other; and (3) The facts must be such that adherence to the fiction of separate entity would, under the circumstances, sanction a fraud or promote injustice."

Ecklund v. Nevada Wholesale Lumber Co., 93 Nev. 196, 197, 562 P.2d 479, 479-80 (1977) (quoting McCleary Cattle Co. v. Sewell, 73 Nev. 279, 282, 317 P.2d 957, 959 (1957)).

First, the parties do not dispute that the Strubles influenced and governed Beltio, Ltd. The Strubles were the sole shareholders and

directors. Mr. Struble was president and ran the business, while Ms. Struble was named secretary/treasurer.

Second, the Strubles each testified that they formed Beltio, Ltd. in accordance with Nevada law and in general, they adhered to corporate formalities, such as conducting shareholder and director meetings and keeping minutes. If these were the only facts presented below, we could easily conclude that the district court correctly determined that a "unity of interest and ownership" did not exist and, therefore, the alter ego doctrine should not apply. However, in this case, other facts were presented which overwhelmingly demonstrate that Beltio, Ltd. "had no apparent independent business operation and existed solely for the purpose of conducting the personal business of" the Strubles. Caple v. Raynel Campers, Inc., 90 Nev. 341, 344, 526 P.2d 334, 336 (1974). Therefore, we conclude that under the limited facts of this case, such a unity exists as a matter of law.

Some factors to be considered when determining if a unity exists in an alter ego analysis include, but are not limited to, commingling of funds, undercapitalization, unauthorized diversion of funds, treatment of corporate assets as the individual's own, and failure to observe corporate formalities. Polaris Industrial Corp. v. Kaplan, 103 Nev. 598, 601, 747 P.2d 884, 887 (1987). No one of these factors alone is determinative to apply the alter ego doctrine. See North Arlington Med. v. Sanchez Constr., 86 Nev. 515, 522, 471 P.2d 240, 244 (1970) (undercapitalization alone is insufficient to pierce the corporate veil).

Here, the Strubles commingled corporate funds and even failed to secure a bank account for Beltio, Ltd. until required to do so by the bankruptcy court, one year and eight months after Beltio, Ltd. was formed. The Strubles contend that Beltio, Ltd. used the services of a property management company which maintained a bank account in its own name for Beltio, Ltd.'s business. However, no payments were made by Beltio, Ltd. for the management company's services, nor were any checks regularly issued to Beltio, Ltd. Only one check was ever issued by the management company; this check was issued at the termination of its relationship with Beltio, Ltd., and the check was made out to Mr. Struble, not Beltio, Ltd. Accordingly, Mr. Struble personally acquired money due the corporation.

Afterward, rather than open a corporate bank account in Beltio, Ltd.'s name, Mr. Struble conducted Beltio, Ltd.'s business through his sole proprietorship, Trident Real Estate, thus commingling corporate and non-corporate funds. This act shows the absence of a separate business operation from Mr. Struble's personal business. Additionally, Ms. Struble, the apparent secre-

tary/treasurer of Beltio, Ltd. was not a signatory on the Trident account.

Moreover, Ms. Struble was the secretary/treasurer in name only and served no real function for Beltio, Ltd. She testified at trial that although she was the named secretary/treasurer, she knew and did almost nothing with regard to Beltio, Ltd.'s business affairs. Rather, only Mr. Struble ran the business and kept all financial records. Ms. Struble further testified that although she signed all corporate documents as needed, she was unaware of the significance of most of the documents. Beltio, Ltd.'s lack of a functional secretary/treasurer, along with its lack of a corporate bank account, demonstrates Beltio, Ltd.'s disregard of some corporate formalities.

Furthermore, Beltio, Ltd. was "capitalized" only with a $97,000.00 installment note from the Strubles, "secured" by the Strubles' Colorado property. The security was illusory because the property offered by the Strubles to secure Beltio, Ltd. was involved in extensive litigation, culminating in foreclosure by another creditor of the Strubles. Thus, the Strubles furnished no security to Beltio, Ltd. Beltio, Ltd., in turn, issued a $85,000.00 promissory note to Read in exchange for assignment of the motel lease. This note to Read was secured by the installment note with the artificial security from the Strubles. When Beltio, Ltd. failed to pay Read on its promissory note, Read acquired the apparently worthless installment note from the Strubles secured by the foreclosed Colorado property. Thus, Beltio, Ltd. was clearly undercapitalized and essentially paid nothing to Read for the lease assignment.

Accordingly, although some corporate formalities were observed, a unity of interest and ownership existed between the Strubles and Beltio, Ltd. The Strubles commingled corporate and non-corporate funds, treated Beltio, Ltd.'s finances as their own, disregarded certain corporate formalities, and undercapitalized Beltio, Ltd.

Third, failure to pierce Beltio, Ltd.'s corporate veil by applying the alter ego doctrine will result in an injustice and possibly sanction a fraud. If the Strubles are not held personally liable for Beltio, Ltd.'s debt, the Lorenzes will never have a chance to receive the rent or other payments they deserve because Beltio, Ltd. filed for bankruptcy. As of this date, Beltio, Ltd. and the Strubles continue to manage the motel and profit from their business venture. While Beltio, Ltd. never paid Read for the lease assignment, nor paid the Lorenzes rent or override payments, Beltio, Ltd. was able to pay the Strubles several payments on the installment note. Accordingly, we conclude that all three requirements to applying the alter ego doctrine are satisfied as a matter

of law, and therefore, Beltio, Ltd.'s corporate veil must be pierced.

### CONCLUSION

We conclude that Beltio, Ltd. was assigned the lease on January 20, 1992, and three days later, January 23, 1992, the lease was validly terminated when the Lorenzes re-entered the property. Therefore, Beltio, Ltd. has had no lawful interest in the lease since January 23, 1992. We further conclude that the district court properly held a bench trial to assess the amount of damages Beltio, Ltd. owed the Lorenzes and Loverso for this unlawful possession. Accordingly, we affirm that portion of the judgment below. Finally, we conclude that the alter ego doctrine applies, and that Beltio, Ltd.'s corporate veil should be pierced. Therefore, we reverse the portion of the judgment declining to apply the alter ego doctrine and remand this matter to the district court for further proceedings consistent with this opinion.