# IN THE SUPREME COURT OF THE STATE OF NEVADA

WARREN CERTAIN, AN INDIVIDUAL,
Appellant,
vs.
SUNRIDGE BUILDERS, INC., A
NEVADA CORPORATION; LANDS
WEST BUILDERS, INC., A NEVADA
CORPORATION; DAVID R. HARDY, AN
INDIVIDUAL; AND FORREST VAN
NELSON, AN INDIVIDUAL,
Respondents.

No. 71383

FILED

NOV 28 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEFUTY CLERK

WARREN CERTAIN, AN INDIVIDUAL,
Appellant,
vs.
SUNRIDGE BUILDERS, INC., A
NEVADA CORPORATION; LANDS
WEST BUILDERS, INC., A NEVADA
CORPORATION; DAVID R. HARDY, AN
INDIVIDUAL; AND FORREST VAN
NELSON, AN INDIVIDUAL,
Respondents.

No. 72977

## ORDER REVERSING AND REMANDING (DOCKET NO. 71383) AND DISMISSING (DOCKET NO. 72977)

These are consolidated pro se appeals from a district court amended judgment following a bench trial in a fraudulent conveyance and alter ego action, an award of attorney fees and costs, and an order denying a motion to set aside the judgment under NRCP 60(b)(3). Eighth Judicial District Court, Clark County; Jerry A. Wiese, Judge.

18-906054

Appellant Warren Certain[1] won an arbitration award in excess of $1 million against respondent Sunridge Builders, Inc. (SBI) following a contract dispute related to SBI's performance as general contractor on Certain's residential home build. The district court later modified the award, and entered a final judgment against SBI in the amount of approximately $273,000. Unable to collect on the judgment, Certain filed the underlying action alleging that, shortly after he obtained the arbitration award, respondents David Hardy and Forrest Nelson, who were SBI's sole directors and shareholders, (1) dissolved SBI to avoid paying the judgment; (2) fraudulently transferred cash, equipment, contracts, and employees from SBI to respondent Land West Builders, Inc., a corporation that was unlicensed and in revoked status at the time; and (3) reinstated Lands West's corporate status and obtained a contractor's license to operate it. Based on these allegations, Certain argued that Hardy, Nelson, and Lands West were alter egos of SBI and, as such, were liable for the judgment against SBI. During the later bench trial, the court allowed Certain to add a claim for fraudulent conveyance based on allegations that SBI had improperly transferred the rights in a promissory note to Hardy and Nelson shortly after Certain obtained the arbitration award against SBI.

---

[1]The underlying action included plaintiff Ebony Biddle and, although she filed a notice of appeal, this court later dismissed her appeal as abandoned. *See Certain v. Sunridge Builders, Inc.*, Docket No. 71383 (Order Dismissing Appeal in Part, June 28, 2017).

After a bench trial, the district court entered an amended judgment[2] for respondents, finding that Certain failed to demonstrate a unity of interest and ownership between the respondents to support his alter ego claims and that his fraudulent conveyance claim failed due to a lack of evidentiary support. The district court also awarded respondents attorney fees and costs. Certain now appeals.

*Alter ego claims*

This court will uphold a district court's alter ego determination if substantial evidence exists to support the decision. *LFC Mktg. Grp., Inc. v. Loomis*, 116 Nev. 896, 904, 8 P.3d 841, 846 (2000). However, there is an exception to this deferential standard where it is clear that the district court reached the wrong conclusion. *Id.* Under the standard alter ego doctrine, there are three elements for determining whether the corporate fiction should be disregarded:

> (1) the corporation must be influenced and governed by the person asserted to be the alter ego;
> (2) there must be such unity of interest and ownership that one is inseparable from the other; and (3) the facts must be such that adherence to the corporate fiction of a separate entity would, under the circumstances, sanction fraud or promote injustice.

*Polaris Indus. Corp. v. Kaplan*, 103 Nev. 598, 601, 747 P.2d 884, 886 (1987); *see also* NRS 78.747(2) (codifying the *Polaris* test). In determining whether a plaintiff has demonstrated the second element, the only element at issue

---

[2]The original judgment failed to address the late-added fraudulent conveyance claim.

in this case,[3] courts look to "factors like co-mingling of funds, undercapitalization, unauthorized diversion of funds, treatment of corporate assets as the individual's own, and failure to observe corporate formalities." *Polaris*, 103 Nev. at 601, 747 P.2d at 887. These factors are not exclusive, however, *Lorenz v. Beltio, Ltd.*, 114 Nev. 795, 808, 963 P.2d 488, 497 (1998), and this court has emphasized that "[t]here is no litmus test for determining when the corporate fiction should be disregarded; the result depends on the circumstances of each case." *Polaris*, 103 Nev. at 602, 747 P.2d at 887.

In addition to the standard alter ego doctrine, this court has applied the alter ego doctrine "'in reverse[,]' in order to reach a corporation's assets to satisfy a controlling individual's debt." *Loomis*, 116 Nev. at 906, 8 P.3d at 847. Applying the doctrine in reverse is particularly appropriate "when the controlling party uses the controlled entity to hide assets or secretly to conduct business to avoid the pre-existing liability of the controlling party." *Id.* at 903, 8 P.3d at 846 (quoting *Select Creations, Inc. v. Paliafito Am., Inc.*, 852 F. Supp. 740, 774 (E.D. Wis. 1994)). Thus, this court has held that it will employ a reverse alter ego analysis "where the particular facts and equities show the existence of an alter ego relationship and require that the corporate fiction be ignored so that justice may be promoted." *Id.* at 904, 8 P.3d at 846. This is especially true given "the ease with which corporations may be formed and shares issued in names other than the controlling individual." *Id.* at 905, 8 P.3d at 847. When applying

---

[3]Indeed, the district court found, and the parties do not dispute, that Certain satisfied the first and third elements for demonstrating alter ego.

alter ego in reverse, this court has provided that, in addition to the standard elements that must be met, "there are other equities to be considered[,] . . . namely, whether the rights of innocent shareholders or creditors are harmed by the pierce." *Id.*

Certain argues that there is sufficient evidence in the record to demonstrate that respondents are alter egos of one another. Respondents challenge Certain's assertions and argue that Certain did not present sufficient evidence regarding any of the factors for finding a unity of interest and ownership between the various respondents.[4] While the parties do not frame it as such, a proper analysis of these arguments first requires a standard alter ego analysis to determine whether Hardy and Nelson are alter egos of SBI. And, if Hardy and Nelson are alter egos of SBI, a reverse alter ego analysis must then be conducted to determine whether Lands West is the alter ego of Hardy and Nelson. We limit our analysis in both instances, however, to whether the unity-of-interest element was satisfied, as that is the only element at issue in this appeal.

*Standard alter ego analysis as to SBI*

As to whether Hardy and Nelson have a unity of interest with SBI, *see Polaris*, 103 Nev. at 601, 747 P.2d at 886-87 (providing that analysis of this includes "factors like co-mingling of funds,

_____

[4]To the extent respondents argue that Certain's alter ego claims are focused on Lands West, and that, as a corporation, Lands West cannot be an alter ego of SBI, *see* NRS 78.747(2) (providing that "[a] stock holder, director or officer" of a corporation can act as an alter ego), that argument fails. We have previously held that a corporate entity can act as an alter ego. *See Loomis*, 116 Nev. at 905, 8 P.3d at 847 (determining that the corporate entity in that case acted as the alter ego of an individual director).

undercapitalization, unauthorized diversion of funds, treatment of corporate assets as the individual's own, and failure to observe corporate formalities"), we conclude that the record and district court's findings support a conclusion that this element was satisfied. In particular, the district court found that, after Certain received judgment in his favor against SBI, (1) Hardy and Nelson were paid $82,000 in shareholder distributions from SBI between February and September 2010 *after* they took steps to dissolve SBI;[5] (2) Hardy and Nelson each essentially owned one half of SBI; (3) SBI received a promissory note and assigned all of its rights and interests under that note to Hardy and Nelson, individually; and (4) Hardy and Nelson used $75,000 from an SBI settlement to defend this case in the district court.[6]

These findings suggest that Hardy and Nelson controlled SBI to such an extent that they were inseparable from SBI, demonstrating a unity of interest. *See Polaris*, 103 Nev. at 601, 747 P.2d at 886-87. Indeed, the above findings show that Hardy and Nelson treated SBI's assets as their own as they paid themselves thousands of dollars in shareholder distributions, assigned all rights and interests in an SBI promissory note to themselves individually, and used SBI's settlement money to defend the present action, while also closing SBI under the guise of insolvency. The

---

[5]The dissolution was based on SBI's alleged insolvency.

[6]To the extent Certain argues that the use of these funds to defend the present case constituted commingling and an unauthorized diversion of funds, we agree with the district court's finding that those payments did not constitute commingling or unauthorized diversions.

district court therefore erred in concluding that Hardy and Nelson were not SBI's alter egos.

*Reverse alter ego analysis as to Lands West*

In concluding that Certain failed to demonstrate a unity of interest between Hardy and Nelson and Lands West, the district court focused solely on the factors enumerated in our prior cases. *See, e.g., Loomis*, 116 Nev. at 904, 8 P.3d at 847 (identifying factors relevant to determining whether the unity-of-interest element was satisfied for an alter ego claim). But those factors are not exclusive. *Id.* 905, 8 P.3d at 847. The district court should have considered other evidence and findings relevant to determining whether there was a unity of ownership between Nelson and Hardy and Lands West. In particular, the district court found that, after the arbitration award in Certain's favor was entered, (1) Hardy and Nelson reinstated Lands West after its license was revoked in 2007; (2) a party that was contracting with SBI for construction work decided to hire Lands West for the same project instead of continuing work with SBI; (3) Lands West took over SBI's former office space and phone number when it was reinstated; (4) SBI was likely paying rent on Lands West's office space for February 2010; (5) a month after being reinstated as an active business, Lands West had enough capital to obtain a contractor's license, listing SBI as an indemnitor; and (6) Lands West's social media website listed several projects that were not completed by Lands West, but instead were completed by SBI. Most importantly, the district court explicitly found, and the record supports, that "[Hardy and Nelson] testified at trial [that] there was really no dispute that they reinstated Lands West for the purpose of avoiding" the judgment in favor of Certain. These facts support that Nelson

and Hardy used Lands West "to hide assets or secretly to conduct business to avoid" the earlier judgment in favor of Certain such that the corporate veil should be pierced in reverse. *Id.* at 906, 8 P.3d at 846.

This does not end the inquiry, however, because the court still must consider, in a reverse alter ego analysis, whether any innocent shareholders would be harmed by a reverse piercing of the corporate veil. *Id.* at 905, 8 P.3d at 847. To that end, upon remand, the district court shall first determine whether Lands West has any shareholders or creditors beyond Nelson. This includes a determination of whether Hardy holds shares in Lands West, as the record and district court's findings suggest that only Nelson is a shareholder of Lands West. The district court must then determine whether any additional shareholders or creditors, to the extent there are any, are "innocent shareholders or creditors" that would be harmed by a reverse pierce such that a reverse pierce of Lands West's corporate veil would be improper. *See Loomis,* 116 Nev. at 903-04, 8 P.3d at 846. Finally, the district court must determine whether "there are [any] other equities to be considered," that have a bearing on whether to pierce the veil in reverse. *Id.* at 905, 8 P.3d at 847.

*Fraudulent conveyance claim*

Certain next argues that the district court erred by finding that his fraudulent conveyance claim lacked merit. He asserts that the district court improperly disregarded evidence that Hardy and Nelson fraudulently conveyed SBI's interest in a settlement promissory note to themselves as individuals after the final judgment on his arbitration award had been entered. He also argues that the district court erred in concluding that there was insufficient evidence produced as to the conveyance's value to

determine appropriate damages. Hardy and Nelson respond that the district court did not err by finding that there was insufficient proof regarding the fraudulent transfer claim, and that while they received a $86,765.06 judgment on the promissory note, they have only collected $10,000 of that amount.

In Nevada, a fraudulent conveyance occurs "if the debtor made the transfer . . . [w]ith actual intent to hinder, delay or defraud any creditor of the debtor," without regard for when the transfer was made or when the debt was incurred. NRS 112.180(1).[7] In determining "actual intent" to support a fraudulent conveyance claim, considerations relevant to this case include whether:

> (a) The transfer or obligation was to an insider;
>
> . . . .
>
> (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
> (e) The transfer was of substantially all the debtor's assets;
>
> . . . .
>
> (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

---

[7]A "creditor" includes judgment creditors. *See* NRS 112.150 (defining "creditor" as "a person who has a claim," and "claim" as "a right to a payment, whether or not the right is reduced to judgment"); *see also Sportsco Enters. v. Morris*, 112 Nev. 625, 632, 917 P.2d 934, 938 (1996) (applying NRS Chapter 112 to a claim arising from a confession of judgment).

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred . . . .

NRS 112.180(2).

Here, in addressing Certain's fraudulent transfer claim regarding the promissory note, the district court found that "[t]here was no convincing evidence that any [of respondents'] fraudulently transferred money or any other asset [was] to [Certain's] detriment." The record, however, supports that, by assigning SBI's rights in the promissory note to themselves, Hardy and Nelson intended "to hinder, delay or defraud" Certain, as the creditor of SBI. NRS 112.180(1)(a). For example, the record reflects that Hardy and Nelson, as individuals, filed a complaint regarding the promissory note alleging that SBI "assigned all of its rights, title and interest in, to and under the Settlement Agreement and Note" to themselves *after* entry of Certain's arbitration award against SBI.[8] In addition, the district court's findings reflect that SBI became insolvent around the time it transferred its rights in the note to Hardy and Nelson. This evidence demonstrates that the transfer was made to insiders of the company, which was or became insolvent around the time of the transfer, just two months after Certain obtained the arbitration award against SBI, satisfying NRS 112.180(2)(a), (d), (e), (h), (i), and (j). This is ample evidence upon which to conclude SBI's transfer of rights in the promissory note was a fraudulent

---

[8]The complaint indicated the rights were transferred to Hardy and Nelson in March 2010 and Certain obtained his award against SBI in January 2010, at the latest.

 

conveyance and we therefore reverse the district court's judgment in favor of respondents on Certain's fraudulent conveyance claim.

In light of the foregoing, we

ORDER the judgment of the district court REVERSED AND REMAND Docket No. 71383 to the district court for proceedings consistent with this order.[9]

_____, C.J.
Douglas

_____, J.          _____, J.
Cherry                                Gibbons

_____, J.          _____, J.
Pickering                             Hardesty

_____, J.          _____, J.
Parraguirre                           Stiglich

---

[9]Because there is no longer a basis for an award of attorney fees, we reverse the district court's award of attorney fees to respondents. *See Schwabacher & Co. v. Zobrist,* 97 Nev. 97, 97-98, 625 P.2d 82, 82 (1981) (reversing award to defendant for attorney fees and costs where "the basis for the order no longer exist[ed]"). This does not preclude the court from awarding appropriate attorney fees on remand. Furthermore, because we reverse and remand the amended judgment in Docket No. 71383, we dismiss as moot the appeal in Docket No. 72977 challenging the denial of a motion to set aside the judgment under NRCP 60(b)(3).



cc: Hon. Jerry A. Wiese, District Judge
Warren Certain
Peel Brimley LLP/Henderson
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A