# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| ALEXANDER POTASI, AN INDIVIDUAL; AND DEREK FESOLAI, AN INDIVIDUAL, <br> Appellants, <br> vs. <br> PALOMINO CLUB, LLC, A DOMESTIC LIMITED LIABILITY COMPANY, D/B/A PALOMINO CLUB; HACHIMAN, LLC, A DOMESTIC LIMITED LIABILITY COMPANY; ADAM GENTILE, AN INDIVIDUAL; CRAIG PARKS, AN INDIVIDUAL; AND LACY'S LLC, D/B/A LACY'S, <br> Respondents. | No. 81395 <br><br> FILED <br><br> NOV 2 3 2021 <br> ELIZABETH A. BROWN <br> CLERK OF SUPREME COURT <br> BY_____ <br> DEPUTY CLERK |
| ALEXANDER POTASI, AN INDIVIDUAL; AND DEREK FESOLAI, AN INDIVIDUAL, <br> Appellants, <br> vs. <br> PALOMINO CLUB, LLC, A DOMESTIC LIMITED LIABILITY COMPANY, D/B/A PALOMINO CLUB; HACHIMAN, LLC, A DOMESTIC LIMITED LIABILITY COMPANY; ADAM GENTILE, AN INDIVIDUAL; CRAIG PARKS, AN INDIVIDUAL; AND LACY'S LLC, D/B/A LACY'S, <br> Respondents. | No. 81830 |

*ORDER AFFIRMING IN PART AND REVERSING IN PART*

This case presents consolidated appeals from a district court judgment and postjudgment award of costs in a tort action stemming from a shooting at respondent strip club, Lacy's LLC. Eighth Judicial District Court, Clark County; James Crockett, Judge.

Appellants Alexander Potasi and Derek Fesolai brought suit against Lacy's and the remaining respondents—Palomino, LLC, a strip club in the same building as Lacy's; Hachiman, LLC, a holding company that wholly owned Lacy's and Palomino; Adam Gentile, who wholly owned Hachiman; and Craig Parks, Lacy's manager—on theories of direct and alter ego liability. But in appellants' complaint, they incorrectly asserted that the shooting occurred at Palomino rather than Lacy's, and that Palomino employed the security personnel on duty at the time of the shooting, though they were actually Hachiman employees.

*The district court properly found no alter ego liability.*

The parties stipulated to a bifurcated trial where the district court decided the availability of alter ego liability first in its "alter ego findings of fact and conclusions of law re: bifurcated trial" (alter ego order). To justify piercing the corporate veil, appellants needed to prove, by a preponderance of the evidence, each of the following elements:

> (1) The corporation must be influenced and governed by the person asserted to be its alter ego[;] (2) There must be such unity of interest and ownership that one is inseparable from the other; and (3) The facts must be such that adherence to the fiction of separate entity would, under the circumstances, sanction a fraud or promote injustice.

*Lorenz v. Beltio, Ltd.*, 114 Nev. 795, 807, 963 P.2d 488, 496 (1998) (noting the factors for alter ego liability); *see Ecklund v. Nev. Wholesale Lumber Co.*, 93 Nev. 196, 197-98, 562 P.2d 479, 480 (1977) (noting that the party seeking

to pierce the corporate veil bears the burden). The district court found that appellants failed to do so. and substantial evidence supports this finding. *See Lorenz*, 114 Nev. at 807, 963 P.2d at 496 (stating that this court reviews findings regarding alter ego liability deferentially and will uphold such findings if supported by substantial evidence). While appellants liberally elaborate on and attempt to draw nefarious inferences from the limited testimony they elicited at trial, the supportable core of their proof is that Lacy's, Palomino, and Hachiman share a physical building, an ice machine, a space for liquor storage, employees, shuttles and valet services, and an insurance policy.[1] Even viewed in isolation, however, these facts are not sufficient to show that the entities and individuals are inseparable. And, in any event, the testimony from which these facts were unearthed offers sufficient context to render them largely irrelevant—the shared building is a strip mall, Lacy's and Palomino have separate addresses; interior walls and doors, monitored by each club's respective security, separate the clubs; Hachiman is the named insured on the policy in question, Lacy's and Palomino are additional insureds, and Hachiman obtained the single insurance policy (on the advice of its insurance agent) apportioning premium payments among the entities.

---

[1]Some other allegations appellants emphasized are that: a single mailing address and phone number were used on each entities' bar and nightclub license applications; there was an awning over the entrance to Lacy's that bore Palomino's name; and, no one changed Lacy's Facebook page to reflect the change from Lacy's Lounge to Lacy's LLC. To the extent the district court weighed these allegations and was unpersuaded, this was its province. *See Douglas Spencer & Assocs. v. Las Vegas Sun, Inc.*, 84 Nev. 279, 282, 439 P.2d 473, 475 (1968).

Appellants further suggest that there was evidence of Lacy's funds "being dubiously documented, redistributed, and ultimately funneled to Hachiman and Gentile," but they offer no record cites in support of this assertion. *See* NRAP 28(e)(1). Technicalities aside, the testimony was to the contrary of appellants' assertion. Indeed, the record shows that: Hachiman kept separate financial records for the entities it managed; Lacy's had its own bank account which Hachiman maintained; Hachiman paid Lacy's payroll and expenses from that account and kept a record of the same; Hachiman maintained Lacy's bank account at a minimum balance of $20,000; and, Lacy's has always been able to pay its bills as they come due. Moreover, the record reflects that Parks' agreement with Lacy's was similar to that of many strip-club promoters—he collected the door charges because his marketing and other efforts generated business; Lacy's retained all bar revenues, which Parks deposited in a Hachiman safe at the end of each shift.

Appellants also lean heavily on the fact that 54% of Lacy's was sold to Parks and a third party, Luis Garcia, shortly after the shooting for a low price, claiming that the sale shows that adherence to the fiction of separate entity would sanction a fraud or promote injustice. But, appellants offered only conjecture as to an alleged improper purpose or unjust result of this sale—they produced no admissible evidence or testimony in support of this claim. Instead, there was repeated testimony that negotiations over the sale of Lacy's had been ongoing long before the shooting and that the low price related to Parks' prior investment in the business.[2] Nor did

_____

[2]No doubt appellants will note that Garcia also paid this low price and Parks had no knowledge as to why; but Garcia did not testify and therefore his explanation is not in the record.

appellants show how this sale affected them—there is no admissible evidence in the record to suggest that the purchase reduced the company's assets; and if alter ego liability were otherwise supportable, either Hachiman or Gentile[3] (to whom appellants' attempted to extend liability) remains a 46% owner.

In short—the district court gave appellants ample opportunity to offer actual evidence or testimony in support of alter ego liability, but appellants produced only those innocuous facts discussed above, divorced from their context and speculatively framed as nefarious. To the extent the district court gave greater weight to testimony that contextualized the facts rather than appellants' insinuations, this was entirely appropriate.[4] *See Spencer*, 84 Nev. at 282, 439 P.2d at 475.

*Appellants failed to demonstrate on appeal that the district court abused its discretion in denying leave to amend*

The district court went one step further in its alter ego order, dismissing with prejudice all of the respondents other than Palomino—including Lacy's and Hachiman—based on the complaint's misstatements that the shooting occurred at Palomino and that Palomino employees were involved in the negligent security. Appellants suggest, in passing, that the district court should have instead allowed them leave to amend. But

---

[3]It appears that the ownership of this third share is the subject of separate litigation that has no other bearing here.

[4]The respondents and district court also examined the "reverse piercing" doctrine, *see LFC Mktg. Grp., Inc. v. Loomis*, 116 Nev. 896, 903, 8 P.3d 841, 846 (2000) (explaining the differences between traditional alter ego and reverse piercing). Because substantial evidence supports the district court's finding that traditional piercing was not warranted as to Hachiman, we need not reach the possibility of reverse piercing from Hachiman to Palomino.

appellants relegate this discussion to a footnote and a few pages of unclear procedural discussion, largely unsupported by record cites or legal authority. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (noting that it is an appellant's responsibility to present cogent argument and relevant authorities in support thereof). Even further, appellants' motion before the district court was devoid of any "showing of the nature or substance of the proposed amendment or what the appellant expect[ed] to accomplish by it," appellants having failed to attach any proposed amendments thereto. *See Adamson v. Bowker*, 85 Nev. 115, 121, 450 P.2d 796, 801 (1969) (upholding district court's denial of leave to amend under these circumstances). And, even if the appellate briefing or preceding motion to amend could sufficiently clear these muddied waters, the limited procedural background appellants provided suggests that they did not properly preserve the argument surrounding potential amendment in any case— both appellants and respondents introduced testimony and evidence in pre-trial motion practice, depositions, and the first phase of the trial that the shooting occurred at Lacy's and that the security guards were actually Hachiman employees; but, appellants did not move to amend their complaint until after the respondents renewed their motion for summary judgment in favor of Palomino, following the alter ego order dismissing Lacy's and Hachiman. *See Connell v. Carl's Air Conditioning*, 97 Nev. 436, 439, 634 P.2d 673, 675 (1981) (upholding district court's denial of leave to amend "in light of appellant's dilatory conduct in waiting until the eve of trial to seek an amendment").

In short, the appellants have not demonstrated that the district court abused its discretion by refusing to allow them to amend the

complaint. *See MEI-GSR Holdings, LLC v. Peppermill Casinos, Inc.*, 134 Nev. 235, 239, 416 P.3d 249, 254 (2018) (noting that "a motion for leave to amend pursuant to NRCP 15(a) is addressed to the sound discretion of the trial court, and its action in denying such a motion will not be held to be error in the absence of a showing of abuse of discretion" (internal quotations omitted)); *State, Univ. & Cmty. Coll. Sys. v. Sutton*, 120 Nev. 972, 987-88, 103 P.3d 8, 18-19 (2004) (reviewing the denial of leave to amend under NRCP 15(b) for an abuse of discretion). And if the district court did not abuse its discretion by failing to allow amendment of the complaint, there remained no genuine issue of material fact regarding any claim against any respondent—the complaint sought damages for injuries stemming from a shooting at Palomino, but the undisputed evidence demonstrates that no shooting actually occurred there. We therefore affirm the district court's alter ego order in its entirety, dismissing all the claims against all the respondents other than Palomino, as well as its subsequent order granting respondents' renewed motion for summary judgment as to the claims against Palomino.

*The district court abused its discretion by awarding copying costs based on the summary affidavit provided*

This leaves only the question of the propriety of the district court's award of costs and expenses to respondents under NRS 18.020, which appellants appear to contest only in amount: $2,113.00 for copying costs, $545.03 for expert fees, and $5,210.00 for the court reporter fees. As to the latter two categories, appellants' arguments again fall short. They object to the expert witness fees on the grounds that an expert "was never called to present or defend any opinions in deposition or trial," but "NRS 18.005 does not require an expert witness to testify in order to recover fees less than $1,500." *Logan v. Abe*, 131 Nev. 260, 268, 350 P.3d 1139, 1144

(2015). And, while they argue that the court reporter fees were not recoverable because "they were incurred in a department that does not have an official [court] reporter," they cite no precedent supporting this position. *See Edwards,* 122 Nev. at 330 n.38, 130 P.3d at 1288 n.38. However, we agree with appellants that respondents' summary affidavit supporting the copying costs in question—which states only very generally that "said disbursements have been necessarily incurred and paid in this action"—is insufficient. *See Vill. Builders 96, L.P. v. U.S. Labs., Inc.,* 121 Nev. 261, 277-78, 112 P.3d 1082, 1093 (2005) (noting that a party moving for costs must "provide justifying documentation for each copy made or each call placed to substantiate the reason for the copy or call"). Accordingly, the district court abused its discretion in awarding the copying costs, and we reverse the award of costs on this limited point. *See U.S. Design & Constr. Corp. v. Int'l Bhd. of Elec. Workers,* 118 Nev. 458, 462, 50 P.3d 170, 173 (2002) (noting that the standard of review for an award of costs is an abuse of discretion). We otherwise affirm.

It is so ORDERED.

_____, J.
Cadish

_____, J.
Pickering

_____, J.
Herndon

SUPREME COURT
OF
NEVADA

(O) 1947A

cc:    Chief Judge, Eighth Judicial District Court
       Eighth Judicial District Court, Department 24
       Janet Trost, Settlement Judge
       LBC Law Group
       Cook & Kelesis
       Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A