OPINION
 

 Per Curiam:
 

 At the conclusion of a bench trial, appellant Paul Steelman, Ltd. (“Steelman”) was awarded a money judgment against respondents Omni Realty Partners and LCHC in the amount of $420,414.88. Steelman now challenges the district court’s refusal to pierce the corporate veil of LCHC and impose personal liability upon its shareholders. In turn, Omni and LCHC cross-appeal from that part of the award which is assertedly unsupported by the facts of record. For the reasons explained hereafter, we affirm the district court’s decision with regard to Steelman’s attempt to reach the shareholders of LCHC, but reverse as to the calculation of damages by the lower court.
 

 FACTS
 

 Steelman is an architectural firm specializing in casino and entertainment industry design. The respondents and cross-
 
 *1225
 
 appellants are Omni Realty Partners, (“Omni”), a Nevada limited partnership, LCHC, a Nevada corporation and general partner of Omni, and various individual limited partners of Omni and shareholders of LCHC. Omni was formed to develop and operate a large commercial venture in Las Vegas, and LCHC was formed to shield the general partners of Omni from individual liability. The facts of record indicate that Omni was adequately capitalized, and that the manner in which LCHC was capitalized is not uncommon for corporations of its type.
 
 [1]
 
 It is undisputed that neither Omni nor L.CHC currently have the means with which to satisfy Steelman’s judgment.
 

 DISCUSSION
 

 Steelman’s primary argument is that LCHC was intentionally undercapitalized in order to remain judgment proof, and therefore, adherence to the corporate fiction either sanctions fraud or promotes an injustice. However, Steelman has now disavowed its earlier argument that the corporate form should be discarded because LCHC was the alter ego of its small group of shareholders.
 
 [2]
 
 Although undercapitalization is one criterion considered by courts in deciding whether to set aside the corporate barrier to shareholder liability for corporate debts, it is usually an insufficient ground, of itself, for disregarding the corporate entity in the absence of fraud or injustice to the aggrieved party. North Arlington Med. v. Sanchez Constr., 86 Nev. 515, 522, 471 P.2d 240, 244 (1970). Moreover, the party seeking to pierce the corporate veil must show by a preponderance of the evidence that the financial structure of the suspect corporation “is only a sham and caused an injustice.”
 
 Id.
 

 Assuming for the sake of argument that LCHC
 
 was
 
 undercapi-talized, we are unable to conclude that its formative capitalization was a sham designed to perpetuate fraud or impose an injustice upon Steelman. Indeed, the district court made the following findings regarding the propriety of LCHC’s formation:
 

 The testimony adduced at trial showed that LCHC’s undercapitalization derived from the fact that nearly all of
 
 *1226
 
 the capital infused into the Omni project came from the Omni rather than LCHC, Inc. (Chuck Gavzer testified that LCHC, Inc. was capitalized with a receivable in lieu of cash, a situation not uncommon with a corporate general partner.) According to the expert testimony at trial, this was done so that the limited partners could receive the tax benefits from the inevitable losses the project would incur during the development stage. Clearly this indicates that the capitalization of the project was not designed to defraud potential creditors, but rather to minimize losses to the investors through tax benefits. It must be noted that this case does not present the typical “piercing” case where one or two insiders benefit from the corporate form to the detriment of their creditors. In this case none of the project’s supporters or backers has profited and many have incurred substantial losses.
 

 Steelman also cannot show that he was prejudiced by the way the project was financed. Even if all of the capital contributions had come in through LCHC, Inc., in the form of paid-in-capital from shareholders, this fact would not have “saved” the project or benefitted Steelman because in either scenario, all of the capital was expended in trying to obtain financing. The fact that Steelman will not be fully paid does not automatically create an “injustice.”
 

 It is unfortunate that Steelman’s recovery is limited to the assets of two insolvent entities; but Steelman alone is responsible for not protecting against the eventuality that occurred by insisting on individual guarantees from shareholders who were financially capable of satisfying its claims against LCHC. We have long held that we will not disturb a district court’s judgment that is supported by substantial, yet conflicting, evidence. Polaris Indus. Corp. v. Kaplan, 103 Nev. 598, 601, 747 P.2d 884, 886 (1987). Substantial evidence is that which “a reasonable mind might accept as adequate to support a conclusion.” State Emp. Security v. Hilton Hotels, 102 Nev. 606, 608, 729 P.2d 497, 498 (1986). Here, substantial evidence supports the finding of the district court and we refuse to disturb it on appeal.
 

 Having affirmed the district court’s decision refusing to disregard LCHC as a corporate entity, the remaining issue concerns cross-appellants’ contention that the district court abused its discretion in calculating the amount of Steelman’s damages. We note initially that a trial judge is “clothed with wide discretion” when calculating damages, and only an abuse of that discretion will compel us to intercede. Parsons Drilling, Inc. v. Polar Resources Co., 98 Nev. 374, 377, 649 P.2d 1360, 1363 (1982).
 

 
 *1227
 
 The agreement between the parties provides that, in addition to the compensation for specified services, Steelman would be compensated for every hour it expended on material revisions, subject to a specified hourly rate schedule of $55 per hour for draftsmen, $80 per hour for the project director, and $100 per hour for a firm principal. It is uncontested that Steelman performed material revisions at the cross-appellants’ request, yet Steelman concedes that it failed to record the number of hours expended on work attributable to the revisions. Despite the dearth of evidence, the district court exercised its discretion and awarded $45,000 to Steelman for “extras,” which it arrived at after finding that Steelman expended 400 hours at a uniform rate of $125 per hour. Unfortunately, the lower court abused its discretion when it assumed facts not in evidence and disregarded Steelman’s failure to record the amount of hours it expended on material revisions. Therefore, this segment of the damage award cannot stand.
 

 We have considered the remaining assignments of error and conclude that they are without merit and need not be addressed.
 

 CONCLUSION
 

 For the foregoing reasons, we affirm the district court’s judgment in refusing to disregard LCHC as a corporate entity, but reverse and vacate that part of the damages award to Steelman which, as noted above, is unsupported by substantial evidence.
 

 [1]
 

 Although LCHC was only capitalized with a $200 receivable, its real value was best measured by the collective expertise of its shareholders.
 

 [2]
 

 Steelman’s argument that “the trial court erred in applying the alter ego doctrine to the facts of this case” is disingenuous and belied by the record. Steelman
 
 relied
 
 upon the alter ego doctrine below, but now rejects its applicability on appeal after losing the argument in the district court.