MALLARD AUTOMOTIVE GROUP, LTD., a Nevada Limited Liability Company, Plaintiff,

v.

LECLAIR MANAGEMENT CORPORATION; Brake Xperts, Inc.; United States of America; and Does I through XX inclusive, Defendants.

LeClair Management Corporation, a Nevada Corporation; and Brake Xperts a North Carolina Corporation, Cross–Claimants,

v.

United States of America, Cross–Defendants.

No. CV–N–99–0022–ECR–RAM.

United States District Court, D. Nevada.

March 2, 2001.

Robert Anderson, Hale, Lane, Peek, Dennison, Howard & Anderson, Las Vegas, NV, for plaintiff.

Todd Bader, Bader & Ryan, Ltd., Reno, NV, for LeClair Management and Brake Xperts, Inc.

Jennifer A. Giaimo, U.S. Justice Dept., Tax Division, Washington, D.C., Kathryn Landreth, U.S. Attorney, Las Vegas, NV, for United States of America.

## ORDER

EDWARD C. REED, Jr., District Judge.

### Background and Statement of the Case

LeClair Management Corporation (hereinafter "LeClair") is a corporation owned by David Smith's (hereinafter "Smith") wife.[1] LeClair was in the business of operating Midas muffler shops in Northern Nevada. LeClair eventually sold these shops to Mallard Automotive Group (hereinafter "Mallard"). Mallard filed a Complaint for interpleader in the Nevada state district court on December 15, 1998, to determine the rights and claims to the sale proceeds. This was necessary because the United States and LeClair both claim the money. The United State's claim is based on the fact that Smith owes the IRS over $1,000,000 in taxes based on a trust fund recovery penalty. The United States argues that Smith is the alter ego of LeClair and that it would be justified in reaching the assets of LeClair to satisfy Smith's tax liability.

Currently, all that is left are the cross claims of the United States and LeClair.[2] LeClair filed a motion for summary judgment (# 36) on June 5, 2000, claiming that the United States had no right to the money, and asking for it to be disbursed to LeClair. The United States filed a response (# 37) on June 23, 2000. LeClair filed a reply (# 39) on July 13, 2000. For the following reasons, the motion for summary judgment will be DENIED.

### Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists. *Northwest Motorcycle Ass'n v. U.S. Department of Agriculture*, 18 F.3d 1468, 1471 (9th Cir.1994). The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Judg-

---

1. Smith's wife owns part of the stock of LeClair personally. The other part is owned by another corporation, of which Smith's wife is the sole shareholder.

2. Mallard deposited the money in an account with the court, and was then dismissed from the case.

ment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. Fed.R.Civ.P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995), *cert. denied*, 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although the parties may submit evidence in an inadmissible form—namely, depositions, admissions, interrogatory answers, and affidavits—only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c); *Beyene v. Coleman Security Services, Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Summary judgement is not proper if mate-

rial factual issues exist for trial. *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir.1999). As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Disputes over irrelevant or unnecessary facts should not be considered. *Id.* Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole. *Id.*

### Analysis

This case is properly in the federal district court, having been removed from the state court pursuant to 28 U.S.C. §§ 1442, and 1444. The determination of whether an individual is the alter ego of a corporation is governed by Nevada state law. *See Towe Antique Ford Foundation v. IRS*, 999 F.2d 1387 (9th Cir.1993) ("We apply the law of the forum state in determining whether a corporation is an alter ego of the taxpayer."). Neither party disputes that Nevada law controls.

This case involves the doctrine of alter ego, or "piercing the corporate veil." Normally the doctrine of alter ego, or "piercing the corporate veil" involves holding the individual liable for debts and obligations of the corporation. In the case before us, the United States seeks to hold LeClair responsible for the debts and obligations of Smith. This "reverse piercing" situation has been accepted in Nevada. *LFC Marketing Group. Inc., v. Loomis*, 8 P.3d 841 (Nev.2000). Nevada law recognizes that "the corporate cloak is not lightly thrown aside" [3] and that reverse piercing is appro-

---

**3.** *Lorenz v. Beltio, Ltd.*, 114 Nev. 795, 807, 963 P.2d 488, 498 (1998) *quoting Baer v.* *Amos J. Walker Inc.*, 85 Nev. 219, 452 P.2d 916 (1969),

priate only in "those limited instances where the particular facts and equities show the existence of an alter ego relationship and require the corporate fiction be ignored, so that justice may be promoted." *LFC Marketing Group Inc.*, 8 P.3d at 846.

### Alter Ego

■ To establish that the LeClair is the alter ego of Smith, the United States must establish that: (1) the corporation (LeClair) was influenced and governed by the person asserted to be the alter ego (Smith); (2) there must be such unity of interest and ownership that one is inseparable from the another; and (3) the facts must be such that adherence to the corporate fiction of a separate entity would, under the circumstances, sanction fraud, or promote injustice. *Polaris Indus. Corp. v. Kaplan*, 103 Nev. 598, 601, 747 P.2d 884, 886 (1987) *citing Mesler v. Bragg Management Co.*, 39 Cal.3d 290, 216 Cal. Rptr. 443, 702 P.2d 601, 606 (1985).

### Influenced and Governed

■ Genuine issues of material fact exists as to whether LeClair was influenced and governed by Smith. The United States has presented evidence that indicates that Smith was involved in all of LeClair's major decisions. Deposition testimony indicates that although Smith's wife technically ran the company, she relied on Smith for advice in all aspects of management. Wife's Deposition p. 46, 48. Smith was present at all discussions concerning LeClair's acquiring a Midas franchise, people regarded Smith as being in charge of the Midas businesses[4] (the business of LeClair), Smith had intricate knowledge of how the business was run,[5] he was in charge of the accounting department,[6] negotiated leases,[7] and was an integral part of the sale of LeClair's business to Mallard.[8]

Smith argues that he was employed by LeClair for the exact purpose of managing the company. Therefore, the advice given, and participation was within his job description. He argues that the final decisions were always made by his wife. However, in her deposition, Smith's wife admits to knowing almost nothing about the business of LeClair. She had difficulty answering questions about LeClair,[9] about the Midas franchises,[10] and about how a business is run in general.[11] Based on the evidence presented, a reasonable jury could decide that Smith controlled LeClair.

### Unity of Interest

■ Genuine issues of material fact exist as to whether there was unity of interest between Smith and LeClair. The Nevada Supreme Court has set forth factors to consider in the analysis of unity which include: (1) commingling of funds: (2) undercapitalization; (3) unauthorized diversion of funds; (4) treatment of corporate assets as individual's own; and (5) failure to observe corporate formalities. *Lorenz*, 114 Nev. at 808, 963 P.2d at 496. Although these factors may indicate that an alter ego relationship exists, they are not conclusive. *See Polaris Indus. Corp.*, 103 Nev. at 602, 747 P.2d at 887 ("There is no

4.  Elam Deposition p. 18, 28–29.

5.  Taxpayer Deposition p. 18, 69, 72, 77, 80–81, 103.

6.  Taxpayer Deposition p. 17–18, 39, 54, 119; Wife's Deposition, p. 38–39

7.  Taxpayer's Deposition p. 32–33; Wife's Deposition p. 104.

8.  Taxpayer's Deposition p. 50; Wife's Deposition p. 106; Elam's Deposition p. 19, 23.

9.  Wife's Deposition p. 58–60, 88, 103.

10.  Id.

11.  Wife's Deposition p. 57–58, 82–84.

litmus test for determining when the corporate fiction should be disregarded; the result depends on the circumstances of each case.").

The United States has presented evidence that Smith commingled funds, treated the corporate assets as his own, and diverted corporate funds. Deposition testimony indicates that Smith and his wife had no personal bank account during the time LeClair conducted business. Wife's Deposition, p. 131, 165–66 Personal expenses were paid out of the LeClair bank account, including purchases of wine[12], food,[13] and artwork[14], payment of bills, including utilities[15], dry cleaning[16], life insurance,[17] and credit cards[18], and swimming pool repair.[19]

The government argues that LeClair's adherence to corporate formalities is not persuasive to indicate that there was no alter ego relationship. The two shareholders of LeClair were Smith's wife, and a corporation 100% owned by Smith's wife. Smith's Deposition p. 29, 64–65. Therefore, the only attendee at all meetings was Smith's wife. The business of these meetings was often the issuance of loans to Smith, loans that he was responsible for keeping track of repayment. Wife's Deposition p. 124, 130. In addition, there are checks that are made out to Smith or to "cash" and signed by Smith. Giaimo Declaration, Exhibit G. The government argues that the adherence to corporate formalities is meaningless, because Smith's wife exercised no independent control over the corporation.[20]

■ In general, Smith argues that because he and his wife executed a post-nuptial agreement, LeClair is her separate property, and therefore, cannot be reached to satisfy his tax liability. In a normal case, the protection of a post-nuptial agreement may apply. However, in this case, the question is not whether the government can use Smith's wife's personal property to satisfy Smith's tax liability, but whether the government can directly reach LeClair's assets (the sale of the Midas franchise) for that purpose. Therefore, if the United States proves that Smith is the alter ego of LeClair, the post-nuptial agreement will not shield LeClair's assets from the tax levy.

■ Although Smith owns no stock in LeClair, this is not determinative of whether Smith can be found to be the alter ego of LeClair. *See LFC Marketing Group. Inc.*, 8 P.3d at 847 ("Although ownership of corporate shares is a strong factor favoring unity of ownership and interest, the absence of corporate ownership is not automatically a controlling event.").

Based on the evidence presented, a reasonable jury could find that there was sufficient unity of interest between Smith and LeClair to decide that Smith was the alter ego of LeClair.

---

**12.** Taxpayer Deposition p. 70–71, 104; Giaimo Declaration Exhibit H & I.

**13.** Taxpayer Deposition p. 85–86; Giaimo Declaration Exhibit I.

**14.** Taxpayer Deposition p. 85, 111–12

**15.** Taxpayer Deposition p. 89–91; Giaimo Declaration Exhibit H and I.

**16.** Giaimo Declaration Exhibit H.

**17.** Taxpayer Deposition p. 101–02; Giaimo Declaration Exhibit H.

**18.** Giaimo Declaration Exhibit H, I, J.

**19.** Taxpayer Deposition p. 83; Wife's Deposition p. 152; Giaimo Declaration Exhibit H.

**20.** Further evidence of this is the fact that Smith had unrestricted access to the books and accounts of LeClair. Smith Deposition p. 54, 119.

### Fraud or Injustice

██ In *Towe Antique Ford Foundation,* the court held that reverse piercing was available to allow the United States to "recover a taxpayer's delinquent tax liability from his alter ego business entity." 999 F.2d 1387, 1390. The parties do not dispute that Smith owes money for an outstanding tax liability although they do dispute the amount. The United States must prove that "the financial structure of the suspect corporation 'is only a sham and caused an injustice.'" *Paul Steelman, Ltd., v. Omni Realty Partners,* 110 Nev. 1223, 885 P.2d 549, 550 (1994) *citations omitted.* The United States does not have to prove that LeClair was set up to be a sham corporation, only that adherence to the corporate form would perpetuate a fraud or injustice.

### Conclusion

Reverse piercing is only allowed if the government can establish the Smith is the alter ego of LeClair. We find that genuine issues of material fact exist as to whether Smith dominated and controlled LeClair, and whether there was unity of interest between Smith and LeClair. A reasonable juror could find that these two prongs of the test were satisfied. In addition, we find that if the government is able to establish the first two elements of alter ego, evidence exists that would demonstrate that adherence to the corporate fiction would promote a fraud or injustice. There is evidence that Smith knew of the pending trust fund sanctions as LeClair was created, as the United States had issued a Certificate of Assessments and Payments. Smith currently owes the United States over $1,000,000. Allowing corporate formalities to shield this money, if indeed Smith is found to be the alter ego of LeClair, would be a fraud and injustice on the taxpayers of the United States.

*IT IS, THEREFORE, HEREBY ORDERED THAT,* plaintiff's motion for summary judgment (# 36) is *DENIED.*