An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

JSA, LLC, A NEVADA LIMITED
LIABILITY COMPANY AND WIDE
HORIZON, LLC, A NEVADA LIMITED
LIABILITY COMPANY,
Appellants,
vs.
GOLDEN GAMING, INC., A NEVADA
CORPORATION D/B/A SPARKY'S
SOUTH CARSON 7, LLC AND/OR
GOLDEN TAVERN GROUP,
Respondent.

No. 58074

FILED

SEP 25 2013

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

These are appeals from a district court judgment and a post-judgment order awarding attorney fees and costs in a contract action. First Judicial District Court, Carson City; James Todd Russell, Judge.[1]

Quail Park is a commercial property in Carson City consisting of several individual retail units. In March 2003, Quail Park was owned by the Ribeiro Company and was still under construction, however, it was accepting and negotiating leases with potential business tenants. One of the initial tenants of Quail Park was Sparky's Sports Bar and Grill No. 5, one franchise of a chain of Sparky's establishments, who executed a lease in March 2003 prior to completion of construction on Quail Park.

After's Sparky's executed the lease, two separate transactions transpired: (1) Madeline Armstrong and the Richard and Sandra Adamson

---

[1]The Honorable Ron D. Parraguirre, Justice, did not participate in the decision of these matters.

13-28640

Trust (who would later incorporate as appellants JSA, LLC, and Wide Horizon, LLC, respectively) entered into negotiations to purchase the Quail Park unit that was to house Sparky's from Ribeiro; and (2) Mammoth Ventures, LLC, purchased all of the Sparky's locations, business mark, and brand. Mammoth is an affiliate of respondent Golden Gaming, Inc. (Golden Gaming). Thereafter, appellants, through their agents, then entered into negotiations with Golden Gaming to execute a lease on the location. Golden Gaming established a limited liability corporation, Sparky's South Carson 7, LLC (Sparky's 7), to be the named tenant of the Quail Park location. In the fall of 2003, Golden Gaming negotiated a new lease with appellants, naming Sparky's 7 as the tenant, which superseded the old lease of Sparky's No. 5. The lease was effectuated in November 2003, shortly after appellants officially closed escrow on Quail Park.

Golden Gaming specifically executed the lease on behalf of its subsidiary Golden Tavern Group (Golden Tavern), who would manage Sparky's 7. Sparky's 7 is listed as the leasee. No iteration of the lease ever listed Golden Gaming as the named tenant and, when asked, Golden Gaming refused to guarantee the lease. Appellants were advised to retain counsel to examine the newly negotiated lease with Sparky's 7, but failed to do so. Appellants and their agents admitted seeing Sparky's 7, and not Golden Gaming, listed on the lease, but did not challenge this based on their assumptions that Sparky's 7 was synonymous with Golden Gaming.

While Golden Gaming provided Sparky's 7 initial capitalization and recapitalized Sparky's 7 on a frequent basis, Sparky's 7 operated in accordance with Nevada gaming law, using its own on-site managers in control of daily business operations. Sparky's 7 managers

would report to a regional manager at Golden Tavern, who would then report to Golden Gaming. Upper-level management and operations occurred at Golden Gaming's offices, including accounting, marketing, and human resources. Golden Gaming directly managed the accounting for Sparky's 7 through the use of consolidated bank accounts with separate accounting through a coding system. Golden Gaming kept separate books and records for Sparky's 7 and filed independent state sales tax returns for Sparky's 7, but filed a single consolidated tax return. Sparky's 7 did not have an operating agreement, as one was not required under Nevada law.

Over the course of Sparky's 7 operations, Golden Gaming sustained approximately $1.5 million in Sparky's 7 losses. Ultimately, Sparky's 7 failed, and payments on the lease stopped. Appellants then sued Golden Gaming alleging breach of contract, breach of the implied covenant of good faith and fair dealing, reformation, alter ego, negligent misrepresentation, and fraudulent misrepresentation. Golden Gaming served appellants with an offer of judgment pursuant to NRCP 68 and NRS 17.115 in the amount of $25,000, which appellants did not accept. After a bench trial, the district court entered judgment in favor of Golden Gaming on all counts and granted Golden Gaming attorney fees and costs based on the offer of judgment. This appeal followed.[2]

On appeal, appellants argue that the district court erroneously determined that (1) Golden Gaming was not a party to the commercial lease agreement and, thus, could not be liable for breach of contract; (2)

_____

[2]The parties are familiar with the facts and we do not recount them further except as is necessary for our disposition.

 

Golden Gaming did not fraudulently or negligently misrepresent its status as tenant or guarantor; (3) reformation was not appropriate; and (4) Golden Gaming was not the alter ego of Sparky's 7.[3] As discussed below, we disagree with appellants' arguments and affirm the district court's judgment.

*Standard of review*

"The district court's factual findings . . . are given deference and will be upheld if not clearly erroneous and if supported by substantial evidence." *Ogawa v. Ogawa*, 125 Nev. 660, 668, 221 P.3d 699, 704 (2009). However, this court reviews a district court's conclusions of law de novo. *Grosjean v. Imperial Palace, Inc.*, 125 Nev. 349, 359, 212 P.3d 1068, 1075 (2009).

*Breach of contract*

Appellants argue that the district court erred in (1) failing to hold Golden Gaming liable due to its failure to disclose its alleged agency status, (2) holding that the lease-commencement contract did not obligate Golden Gaming individually under the lease, and (3) failing to hold Golden

---

[3]Appellants also contend that the district court erred in awarding attorney fees to Golden Gaming based on the offer of judgment. We conclude that the district court did not manifestly abuse its discretion in awarding attorney fees since it properly considered the factors set forth in *Beattie v. Thomas*, 99 Nev. 579, 588-589, 668 P.2d 268, 274 (1983). *See McCarran Int'l Airport v. Sisolak*, 122 Nev. 645, 673, 137 P.3d 1110, 1129 (2006) (attorney fee awards will be upheld absent an abuse of discretion where the award is authorized by a rule, contract, or statute). Accordingly, we affirm the district court's order awarding attorney fees and costs.

Gaming contractually liable as a "dba" of Sparky's 7.[4]  Golden Gaming counters that since the lease clearly indicated that Sparky's 7, and not Golden Gaming, was the tenant, it was not an agent or a "dba." We agree with Golden Gaming.

Appellants first argue that the district court ignored their argument that Golden Gaming was liable under the contract as an undisclosed or partially disclosed agent. We conclude that Golden Gaming is not liable on the contract because Sparky's 7 was listed on the lease as the tenant, and the signature line clearly indicated that the lease was being signed by Golden Gaming on behalf of Sparky's 7. Golden Gaming was never an undisclosed or partially disclosed agent. *See Peccole v. Fresno Air Serv., Inc.*, 86 Nev. 377, 380-81, 469 P.2d 397, 398-99 (1970); *see also Wright Grp. Architects-Planners v. Pierce*, 343 S.W.3d 196, 200 (Tex. App. 2011) (stating that "[w]hen an agent seeks to avoid personal liability on a contract he signs, it is his duty to disclose that he is acting in a representative capacity and the identity of his principal"); *see also* Restatement (Third) of Agency § 6.02 (2006) (discussing agency liability on a contract entered into for an undisclosed principal). Accordingly, the district court correctly determined that Golden Gaming is not liable under the lease pursuant to agency principles.

---

[4]Appellants also argue that Golden Gaming is liable under the multiple-contracts doctrine because Golden Gaming executed contracts in its individual capacity that obligated it as an additional liable party under the lease. While appellants argue that multiple contracts were signed by Golden Gaming, they failed to argue the multiple-contracts doctrine below. "Generally, an issue which is not raised in the district court is waived on appeal." *Nye Cnty. v. Washoe Med. Ctr.*, 108 Nev. 490, 493, 835 P.2d 780, 782 (1992). Under these circumstances, we need not consider this argument.

Appellants also argue that Golden Gaming is liable under a contract theory because it executed the lease-commencement contract in its individual capacity and not on behalf of Sparky's 7, thereby binding Golden Gaming to the lease provisions. However, appellants mischaracterize as a contract a legally irrelevant letter that merely changed the commencement date of the already-signed lease. Because the letter did not alter the identity of the tenant after the fact, it could not make Golden Gaming liable under the lease that was previously signed and in which Golden Gaming had disclosed that it was signing on behalf of the tenant, Sparky's 7.

Appellants further contend that the district court ignored the fact that Golden Gaming repeatedly used various LLCs as dba's for its business operations, making it rational for appellants to assume that it was doing so here.[5] This argument flounders when put in the context of the plain language of the lease, which clearly stated that Sparky's 7 was the tenant and that Golden Gaming was signing for Sparky's 7 and not for itself. "When a contract is clear on its face, it will be construed from the written language and enforced as written." *Sandy Valley Assocs. v. Sky Ranch Estates Owners Assoc.*, 117 Nev. 948, 953-54, 35 P.3d 964, 967 (2001), *receded from on different grounds by Horgan v. Felton*, 123 Nev. 577, 586, 170 P.3d 982, 988 (2007). Because appellants have failed to demonstrate that Golden Gaming was a party to the contract, we conclude

---

[5]To the extent that appellants now try to make a promissory-estoppel-based argument, we conclude that they failed to make a promissory estoppel argument below and, thus, cannot now raise one for the first time on appeal. *See Kahn v. Morse & Mowbray*, 121 Nev. 464, 480 n. 24, 117 P.3d 227, 238 n. 24 (2005).

that the district court did not err in determining that Golden Gaming was not a party to the lease and thus could not be liable for a breach of that lease.[6]

*Fraudulent misrepresentation*

Appellants contend that the district court erred in disregarding evidence of Golden Gaming's alleged fraud, specifically, subsequent contracts that Golden Gaming signed as tenant, a letter from Golden Gaming that included its financial information, a news article concerning the property, and Golden Gaming's failure to disclose that Sparky's 7 was inserted into the lease.

We conclude that substantial evidence supported the district court's determination that Golden Gaming did not make any fraudulent misrepresentations concerning the identity of the tenant. As explained by this court in *Road & Highway Builders, L.L.C. v. N. Nev. Rebar*, 128 Nev. ___, ___, 284 P.3d 377, 381 (2012), the purported fraudulent inducement cannot be something that conflicts with the contract's express terms. Here, the contract clearly states that the tenant is Sparky's 7, and the signature line indicates that Golden Gaming was signing on behalf of Sparky's 7. Thus, Golden Gaming could not have committed fraud since the identity of the leasee as Sparky's 7 is clear in the written lease.

---

[6]Appellants also argue that only Golden Gaming had authority to sign the lease as the sole holder of the Sparky's name, brand, trademark, and logo, but they fail to cite to any authority supporting this proposition. Accordingly, their argument cannot prevail. NRAP 28(a)(9)(A) (an appellant's brief must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); *State, Dep't of Motor Vehicles v. Rowland*, 107 Nev. 475, 479, 814 P.2d 80, 83 (1991) ("Generally, unsupported arguments are summarily rejected on appeal.").

Further, in order to prove intentional misrepresentation, a party must prove that its damages were caused by relying on the original representation or omission. *Nelson v. Heer*, 123 Nev. 217, 225, 163 P.3d 420, 426 (2007). While other, subsequent contracts concerning the location were entered into by Golden Gaming without notations that it was done on behalf of Sparky's 7, these subsequent contracts are irrelevant since they occurred after appellants would have been induced to enter into the original lease contract.

Moreover, appellants failed to demonstrate that Golden Gaming made a false representation through its agents that was justifiably relied upon. Appellants argue that Golden Gaming is liable under *Epperson v. Roloff*, 102 Nev. 206, 719 P.2d 799 (1986). In that case, this court held that a party may be liable for a misrepresentation made by an agent if that party communicated misinformation to its agent and had a reasonable belief that the agent would in turn communicate the misinformation. *Id.* at 212, 719 P.2d at 803. However, the record does not support that this is the situation here.

It is undisputed that Golden Gaming never told appellants or their agents that Golden Gaming was or would be the tenant, and Golden Gaming was never listed as the tenant on the lease. Additionally, the letter from Golden Gaming to appellants' management company that appellants purport was an intentional misrepresentation actually explicitly concerned a different property in Reno for which Golden Gaming was providing a guarantee. Golden Gaming never planned on providing a guarantee for the Quail Park location and declined when asked. Furthermore, the news story about Golden Gaming's acquisition of Sparky's was not directed at appellants nor were any promises made,

express or implied, that Golden Gaming would be the tenant for the Sparky's 7 location. Appellants and their agents' lack of due diligence and erroneous assumptions, not any action by Golden Gaming, resulted in their unfortunate predicament. Thus, we conclude that the district court properly disposed of appellants' unsustainable fraudulent inducement claims.[7]

*Reformation of a contract*

Appellants also argue that the district court impermissibly disregarded their claim for reformation. We disagree because reformation was not an available remedy under these circumstances. *See 25 Corp. v. Eisenman Chem. Co.*, 101 Nev. 664, 672, 709 P.2d 164, 170 (1985) (stating that reformation is available to correct mistakes of fact in a written contract when the instrument "fails to conform to the parties' previous understanding or agreement," as the result of mutual mistake or fraud); *NOLM, L.L.C. v. Cnty. of Clark*, 120 Nev. 736, 740, 100 P.3d 658, 661 (2004) (explaining that reformation has also been allowed "where one party makes a unilateral mistake and the other party knew about it but failed to bring it to the mistaken party's attention"). First, there is no indication of mutual mistake because no evidence was produced that appellants and Golden Gaming ever mutually intended to name Golden Gaming as the tenant under the lease. No draft ever included Golden Gaming as the tenant, and Golden Gaming refused to provide a guarantee. Second, as previously discussed, appellants failed to demonstrate that Golden Gaming committed fraud. Finally, no evidence was presented that

---

[7]As there was no justifiable reliance, appellants' claim for negligent misrepresentation also fails as a matter of law. *See Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 449, 956 P.2d 1382, 1387 (1998).

Golden Gaming knew of appellants' mistaken belief. In fact, Golden Gaming had no communication with appellants until four years after the lease was signed. Accordingly, the district court did not err in determining that the equitable remedy of reformation was not available here.

*Alter ego*

Finally, appellants argue that this court should enter judgment in their favor on the alter ego claim as a matter of law. However, substantial evidence supports the district court's determination that the imposition of alter ego liability was inappropriate.

We "assume, without deciding, that the [alter ego] statute applies [to LLCs] and analyze [appellants'] alter ego arguments under th[e substantial evidence] standard." *Webb v. Shull*, 128 Nev. ___, ___ n.3, 270 P.3d 1266, 1271 n.3 (2012). Because "the alter ego doctrine is an exception to the general rule recognizing corporate independence," *LFC Mktg. Grp. v. Loomis*, 116 Nev. 896, 903-04, 8 P.3d 841, 846 (2000), courts may pierce corporate veils only when plaintiffs establish by a preponderance of the evidence that:

> (a) [t]he corporation is influenced and governed by the stockholder, director or officer;
>
> (b) [t]here is such unity of interest and ownership that the corporation and the stockholder, director or officer are inseparable from each other; and
>
> (c) [a]dherence to the corporate fiction of a separate entity would sanction fraud or promote a manifest injustice.

NRS 78.747(2); *Loomis*, 116 Nev. at 904, 8 P.3d at 846-47. The circumstances of each case dictate whether the doctrine will be applied. *Loomis*, 116 Nev. at 904, 8 P.3d at 847. As discussed below, the district

court correctly determined that the corporate veil should not be pierced in this case.

*Influence and governance*

While Sparky's 7 had its own on-site managers, Golden Gaming influenced and governed Sparky's 7 through its supervision of management and operations. Thus, the first prong of the alter ego test was satisfied.

*Unity of interest and ownership*

Concerning the second prong of the test, appellants argue that they established unity of interest and ownership between Golden Gaming and Sparky's 7. This analysis necessitates a consideration of factors such as (1) commingling of funds, (2) undercapitalization, (3) unauthorized diversion of funds, (4) treatment of corporate assets as the individual's own, and (5) failure to observe corporate formalities. *Lorenz v. Beltio, Ltd.*, 114 Nev. 795, 808, 963 P.2d 488, 497 (1998).

Appellants argue that the funds were commingled because Sparky's 7 had no independent checking account, had no independent review or control over its income and expenses, and because Golden Gaming made all financial decisions, paid the bills, and handled the money. However, as explained by the Second Circuit Court of Appeals, "[c]ourts have generally declined to find alter ego liability based on a parent corporation's use of a cash management system." *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1459 (2d Cir. 1995) (citing *In re Acushnet River & New Bedford Harbor Proceedings*, 675 F. Supp. 22, 34 (D. Mass. 1987); *United States v. Bliss*, 108 F.R.D. 127, 132 (E.D. Mo. 1985); *Japan Petroleum Co. (Nigeria) v. Ashland Oil, Inc.*, 456 F. Supp. 831, 846 (D. Del. 1978)). Accordingly, the use of a single cash management system is insufficient to establish commingling.

Concerning the allegations of undercapitalization, trial testimony established that, at the time of its creation, Sparky's 7 held assets in excess of $850,000, had no debt, full inventory, and cash on hand in the consolidated account attributed to it as it began operating. Then, over the course of operations, Golden Gaming sustained approximately $1.5 million in Sparky's 7 losses before closing the business. This level of financial investment does not even approximate undercapitalization. *See Lorenz*, 114 Nev. at 809, 963 P.2d at 497; *Rowland v. Lepire*, 99 Nev. 308, 317-18, 662 P.2d 1332, 1337-38 (1983). Moreover, while Golden Gaming did not independently authorize diversion of another subsidiary's funds for use by Sparky's 7, the testimony from Golden Gaming's controller supports that there was an implied authorization to recapitalize Sparky's 7 as needed.

Appellants further argue that Golden Gaming treated all assets as its own, pointing out that Sparky's 7 did not own the Sparky's brand and did not have the contractual right to use Golden Gaming's assets, money, or brands. However, Golden Gaming allowed Sparky's 7 to use its brand and recapitalized Sparky's 7 on its own accord and appellants have failed to demonstrate why a contract was necessary for Sparky's 7 to do so.

Finally, while appellants contend otherwise, Sparky's 7 observed all corporate formalities required of a Nevada limited liability corporation. Sparky's 7 filed independent state tax returns, possessed its own gaming license, managed its own employees, and employed on-site managers. Moreover, Golden Gaming separately accounted for and documented all the money that it used to recapitalize Sparky's 7. Appellants fail to support their argument that, to observe corporate

formalities, there must be a separation of funds, independent accounts, agreements for use of the Sparky's brand or reimbursement, or an operating agreement. *See Weddell v. H2O, Inc.*, 128 Nev. ___, ___, 271 P.3d 743, 749 (2012) ("An LLC may, but is not required to, adopt an operating agreement, NRS 86.286."). Accordingly, the evidence presented did not establish a breach of corporate formalities. Thus, the second prong of the alter ego test was not satisfied.

*Whether adherence sanctions fraud or promotes a manifest injustice*

Appellants assert that fraud and injustice resulted from allowing Golden Gaming to be treated separately from Sparky's 7. As was previously discussed, no fraud occurred. Concerning injustice, appellants first contend that injustice would result because appellants will never receive payment for the debt they are owed due to the breach. While this situation may be unfortunate, appellants and their agents, and not Golden Gaming, are "responsible for not protecting against the eventuality that occurred" when it failed to insist that Golden Gaming individually guarantee the Sparky's 7 lease. *Paul Steelman, Ltd. v. Omni Realty Partners*, 110 Nev. 1223, 1226, 885 P.2d 549, 551 (1994). Appellants also argue that injustice will result because Golden Gaming intended for them to rely on the fact that it would be the tenant. Because Golden Gaming never made these representations, we conclude that appellants' argument in this regard is baseless.

*Conclusion regarding alter ego theory*

We conclude that not all of the elements of alter ego were established by a preponderance of the evidence. Because "there is nothing fraudulent or against public policy in limiting one's liability by the appropriate use of corporate insulation," *Miller v. Honda Motor Co.*, 779

F.2d 769, 773 (1st Cir. 1985), we conclude that the district court properly denied the request to pierce the corporate veil.

For the reasons set forth above, we reject appellants' arguments, and we[8]

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Pickering

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

---

[8]All other arguments on appeal lack merit or have been rendered moot by this disposition.

cc:    Hon. James Todd Russell, District Judge
Robert L. Eisenberg, Settlement Judge
Robison Belaustegui Sharp & Low
Laxalt & Nomura, Ltd./Reno
Carson City Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A